OPINION
{¶ 1} This appeal arises from a foreclosure judgment against Michael and Dorene Walling ("Appellants") in the Mahoning County Court of Common Pleas. The foreclosure arose after Appellants failed to make a number of payments on their mortgage loan. The primary issue on appeal is whether the lender, Second National Bank of Warren ("Bank"), was precluded from foreclosing because it had waived its right to declare the loan in default by previously accepting late payments, and by failing to cash two checks that could have covered a number of overdue installments. The Bank has since assigned its interests to Buckeye Retirement Co., LLC, which is the Appellee in this appeal. It is evident from the record that the Bank did not waive its right to declare the loan in default and proceed with foreclosure because the mortgage contained an anti-waiver provision. It is also clear that the Bank did not cash the two checks because Appellants attached conditions to the checks, namely, that the checks could only be cashed if the Bank gave up its right to declare a default for any prior past due payments. The Bank was not required to cash checks that came with extra conditions attached to them. Appellants were clearly in default when the foreclosure action was filed, and the trial court was correct in granting judgment to Appellee. We hereby affirm that judgment.
 FACTS AND PROCEDURAL HISTORY {¶ 2} The parties filed stipulations with the trial court that contain most of the salient facts of this case. On August 16, 1991, Appellants borrowed $60,000 from Second National Bank in Warren, Ohio, and executed a promissory note and mortgage deed on their residence at 2349 Jennifer Drive, Poland, Ohio. Monthly payments on the loan were $560.00. Many of the payments from 1991 to 1998 were sent late, and Appellants would periodically combine payments in order to make the loan current. For example, on May 12, 1997, Appellants paid $1,176.00, which represented two monthly payments, and on July 10, 1997, they paid $3,164.00, which represented five monthly payments. The Bank regularly assessed late charges for Appellants' untimely payments.
 {¶ 3} Appellants did not make any payments on the loan in the months of November and December of 1997, and January and February of 1998. On February 20, 1998, the Bank sent them a letter notifying them that they were in default and that the loan was being accelerated. The Bank demanded payment of the entire outstanding balance of the loan by March 7, 1998. The letter was signed by Jonathan Ames, a vice-president of the Bank. Appellants responded to the letter by sending a letter to Ames along with a check for $2,940.00, which represented five monthly payments and late charges. The letter stated that Appellants were not able to pay off the outstanding balance of the loan. The letter also stated that the Bank, "may endorse and negotiate that check only with the understanding that such endorsement, presentment and negotiation removes the loan from default status." The letter also included a proposal for making current and future payments.
 {¶ 4} The Bank did not immediately respond to the letter, nor did it negotiate Appellants' check. Appellants subsequently sent in another monthly payment along with another letter proposing terms to remove the default and make the loan current. The Bank did not immediately respond to the second letter, and it retained the second check. Appellants later telephoned Mr. Ames and inquired about the status of the loan. Appellants were informed that the matter had been turned over to an attorney and that the Bank was awaiting a response as to how to proceed.
 {¶ 5} In early April of 1998, Appellants received a computer-generated billing slip from the Bank requesting payment in the amount of $4,026.13 to make the account current. In response, Appellants sent a check for the full amount, and the check was negotiated by the Bank.
 {¶ 6} Appellants received monthly billing slips from the Bank in May and June of 1998, but they did not pay these installments. The record indicates that Appellants have not made any payments on the loan since April of 1998.
 {¶ 7} On June 25, 1998, the Bank filed a foreclosure action against Appellants. Appellants filed a response to the complaint and later filed a motion for summary judgment, which was denied. The case was called to trial on stipulations of fact and written briefs, and judgment was entered in favor of the Bank. Appellants filed a timely appeal. However, this Court found that the judgment entry did not constitute a final appealable order. Second Natl. Bank v. Walling, 7th Dist. No. 01-C.A.-6, 2002-Ohio-3852. The case was remanded and the trial court added additional terms which allowed the judgment to be appealed.
 ASSIGNMENTS OF ERROR {¶ 8} Appellants assert the following six assignments of error, which will be addressed together because they are resolved by applying the same principles of law:
 {¶ 9} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANTS-APPELLANTS WHEN IT RULED THAT THE PROMISSORY NOTE AND MORTGAGE IN THIS CASE WERE IN DEFAULT WHEN PLAINTIFF-APPELLEE FILED ITS COMPLAINT ON JUNE 25, 1998.
 {¶ 10} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANTS-APPELLANTS WHEN IT FAILED TO FIND THAT PLAINTIFF-APPELLEE HAD WAIVED ITS RIGHT TO ACCELERATE THE NOTE WITHOUT FIRST NOTIFYING THE DEFENDANTS-APPELLANTS THAT IT WOULD NO LONGER ACCEPT LATE PAYMENTS AND WOULD DEMAND THAT THE INSTALLMENTS BE PAID PER THE EXACT LANGUAGE OF THE PROMISSORY NOTE AND MORTGAGE.
 {¶ 11} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANTS-APPELLANTS WHEN IT FAILED TO FIND THAT THE PLAINTIFF-APPELLEE'S FAILURE TO APPLY DEFENDANTS-APPELLANTS' CHECKS NUMBERS 1219 AND 1250 TO THE MORTGAGE, WHICH APPLICATION WOULD HAVE MADE THE OBLIGATION CURRENT, CONSTITUTED A WAIVER OF ITS RIGHT TO CLAIM A DEFAULT.
 {¶ 12} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANTS-APPELLANTS WHEN IT FAILED TO FIND THAT THE FILING OF A FORECLOSURE ACTION BY PLAINTIFF-APPELLEE WHEN IT WAS IN POSSESSION OF SUFFICIENT FUNDS TO PAY THE LOAN CURRENT AND FOUR MONTHS INTO THE FUTURE WAS IMPROPER AND CONSTITUTED A WAIVER.
 {¶ 13} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANTS-APPELLANTS WHEN IT FAILED TO FIND THAT THE PLAINTIFF-APPELLEE WAS GUILTY OF INEQUITABLE CONDUCT WHICH VITIATES ITS RIGHT OF FORECLOSURE HEREIN.
 {¶ 14} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANTS-APPELLANTS WHEN IT RELIED ON DECISIONAL LAW OF OHIO WHICH IS INAPPOSITE TO THIS FACTUAL SITUATION."
 {¶ 15} Appellants assert that it was unconscionable and improper for the Bank to file a foreclosure complaint given the circumstances of this case. More specifically, Appellants claim that when a mortgagee has in its possession sufficient funds from the mortgagor to make the debt current at the time of filing the foreclosure complaint, and when the mortgagee fails to return or otherwise account for those funds, the complaint for foreclosure should be dismissed with prejudice because the mortgagee then has caused the alleged default and arrearage. Appellants further contend that the Bank waived its right to declare a default and accelerate the note without first notifying them that it would no longer accept late payments. Appellants submit that the Bank had established a pattern of accepting late payments, constructively placing a duty on the Bank to notify Appellants before first demanding installments to be paid per the exact language of the promissory note. Finally, Appellants claim that it was improper for the Bank to accept payments on the mortgage knowing that it was soon going to foreclose.
 {¶ 16} A foreclosure action is equitable in nature. City Loan Savings v. Howard (1984), 16 Ohio App.3d 185, 186, 475 N.E.2d 154. Equitable actions are generally reviewed for abuse of discretion.Sandusky Properties v. Aveni (1984), 15 Ohio St.3d 273, 275,473 N.E.2d 798. The term "abuse of discretion" connotes more than an error of law or of judgment; it implies an unreasonable, arbitrary or unconscionable attitude. Natl. City Bank v. Beyer (2000), 89 Ohio St.3d 152, 159,729 N.E.2d 711. "Arbitrary" means "without adequate determining principle"; "unreasonable" means "irrational" Cedar Bay Const., Inc. v. City ofFremont (1990), 50 Ohio St.3d 19, 22, 552 N.E.2d 202.
 {¶ 17} Appellants primarily rely on Rosselot v. Heimbrock (1988),54 Ohio App.3d 103, 561 N.E.2d 555, to support their theory that the Bank waived its right to accelerate the loan by holding their two checks. InRosselot, the mortgagor failed to make two payments on his loan, then mailed checks for both payments prior to the next month's installment due date. The mortgagee failed to open the envelope with the two checks. Without giving prior notice to the mortgagor that the loan was in default or that it was exercising its right to accelerate the loan, the mortgagee filed a complaint in foreclosure. The Twelfth District Court of Appeals agreed with the trial court that the debtor had defaulted on the loan, but held that foreclosure was not warranted, and the matter was remanded to the trial court to formulate a less severe remedy.
 {¶ 18} Appellants argue that the situation in Rosselot is very similar to what happened in this case, because the Bank held on to two checks which could have brought the loan current in its installments. Appellants cite the following section of Rosselot in support:
 {¶ 19} "[I]t is certainly inequitable for a mortgagee to file a foreclosure suit claiming an acceleration of a promissory note has occurred due to a default on a note secured by a mortgage when that same mortgagee has an unopened envelope containing the very payments which are claimed to be in default." Id. at 106-107.
 {¶ 20} Upon closer examination, it is apparent that Rosselot is inapposite to the facts of this case. In Rosselot, the mortgage installment checks held by the bank were unconditional payments that could have brought the loan to current status. In the instant appeal, Appellants sent checks that had conditions attached to them, conditions that were not part of the original loan or mortgage agreement. Appellants required the Bank to give up a number of rights, such as the right to enforce prior defaults, if the checks were cashed. The conditional nature of the payments that Appellants attempted to make flies in the face of their argument that it was inequitable for the Bank to declare a default while having sufficient funds in its possession to cure the default. Appellants' two conditional checks cannot be considered as proper installment payments at all. Instead, they are more correctly construed as part of Appellants' offer to the Bank to change the terms of the loan and mortgage. The Bank sent Appellants' proposal to its legal department, but in the interim, Appellants once again failed to keep current with the mortgage in April and May of 1998. It was only after these two payments were missed that the Bank decided to act on the default by seeking foreclosure.
 {¶ 21} There is no indication in Rosselot that the debtor's payments came with conditions attached to them. The debtor simply delivered checks as payment, and those checks were not cashed or returned. This may very well be the most significant difference betweenRosselot and the instant appeal. Appellants' entire argument hinges on the validity of those two checks to cover the loan installments due, but not paid, in May and June of 1998. It was Appellants' failure to make those two payments that appears to have been the specific impetus for the Bank's foreclosure action on June 25, 1998. There is no question that, apart from the two uncashed checks, Appellants were in default when the foreclosure action was filed. Since those checks had conditions attached to them and were part of an offer to change the terms of the loan, the Bank was not required to cash them. The checks cannot be treated as the equivalent of future installment payments covering May and June, 1998. Appellants' situation is clearly different than that inRosselot, and their argument only confirms that the trial court was correct in granting judgment to the Bank.
 {¶ 22} A second key distinction is that, in Rosselot, there was no anti-waiver provision in the loan agreement or mortgage. In this case, there is a clearly worded anti-waiver clause in the mortgage agreement, which reads as follows:
 {¶ 23} "Any grant by the Mortgagee of any extension of time for the payment of any obligations secured hereby, either to the Mortgagor or to any other maker, endorser or other person, or the taking of other or additional security for any such obligation, or Mortgagee's waiver of or failure to exercise any right hereunder, including the right to accelerate the whole or any part of the debt secured hereby, shall not in any way affect this mortgage, nor the rights of the Mortgagee hereunder, nor operate as a release from any personal liability upon the obligations secured hereby or under any covenant or stipulation herein contained."
 {¶ 24} It has been repeatedly held that a mortgagee's past acceptance of late loan payments does not constitute a waiver of the mortgagee's right to accelerate and foreclose on a loan following a subsequent default where the relevant loan documents contain "anti-waiver" provisions similar to those in the loan documents in this case. For example, in Ed Wolf, Inc. v. National City Bank, Cleveland (Jan. 23, 1997), 8th Dist. No. 68898 the appellants similarly claimed that the bank waived its right as a creditor to take advantage of the agreement's acceleration clause when it unconditionally accepted past-due payments from the appellants. However, the Eighth District Court of Appeals noted that the agreement contained a provision which expressly negated the appellant's waiver argument. The court explained that past acceptance of late payments does not constitute a waiver of the creditor's right to accelerate on a loan following a subsequent default where the loan documents contain an anti-waiver provision.
 {¶ 25} Similarly, in Metropolitan Life Ins. Co. v. Triskett Illinois,Inc. (1994), 97 Ohio App.3d 228, the First District Court of Appeals ruled in favor of an insurance company that had allowed the borrower to make late payments on a mortgage, but later declared a default after more than six months of late payments. The Triskett court explained that:
 {¶ 26} "Even if, as Triskett contends, Metlife's acceptance of Triskett's February 28, 1991 payment could be construed to constitute a waiver of Triskett's August 1990 default, it cannot be construed to constitute a waiver of Triskett's September 1990 through March 1991 defaults when the mortgage expressly provided that a `waiver * * * of any * * * default * * * shall [not] be deemed or construed to be a * * * waiver * * * of any other * * * default in the performance of the * * * obligations of' Triskett under the mortgage. See also, Gaul v. OlympiaFitness Ctr., Inc. (1993), 88 Ohio App.3d 310, 623 N.E.2d 1281 (holding that a mortgagee's past acceptance of late loan payments does not waive its right to accelerate and foreclose following a subsequent default when the loan documents contain `anti-waiver' provisions). Thus, we answer the initial question of whether Triskett has defaulted on the note in the affirmative." Id. at 234-234.
 {¶ 27} Despite the holdings of these and similar cases, Appellants still maintain that the non-waiver provision should not be a pivotal factor in this Court's resolution of this case, and thatRosselot should dictate the outcome. In support of that contention Appellants cite to Restatement of the Law, Mortgages, 563, Section 8.1, which states:
 {¶ 28} "A mortgagor may defeat acceleration and reinstate the mortgage obligation by paying or tendering to the mortgagee the amount due and owing at the time of tender in the absence of acceleration and by performing any other duty in default the mortgagor is obligated to perform in the absence of acceleration if:
 {¶ 29} "* * *
 {¶ 30} "(2) the mortgagee has waived its right to accelerate;"
 {¶ 31} Appellants argue that illustration 12 to this section of the Restatement is an example of the type of waiver which occurred in the case sub judice. Illustration 12 describes a situation where a mortgagor is, on average 15 days late, in paying 7 of 12 loan installments, and where the mortgagee accepts such payments without reservation. The mortgagee then sends an acceleration notice after the mortgagor is again late in sending the 13th payment. Illustration 12 concludes that the acceleration is ineffective and the default excused. Restatement of the Law 3d, Property, Mortgages (1997), 563, Section 8.1, commente.
 {¶ 32} Appellants' reliance on illustration 12 of the Restatement, supra, is misplaced, because on the very same page is illustration 14, which concludes that, given the same facts as illustration 12 plus the added fact of the inclusion of an anti-waiver provision, the acceleration clause would be effective. Restatement of the Law 3d, Property, Mortgages (1997), 563, Section 8.1, comment e.
 {¶ 33} Courts in Ohio have regularly upheld anti-waiver provisions based on the aforementioned legal principles. Although an anti-waiver clause is not the only factor to consider when weighing the equities in a foreclosure action, it is a crucial part of the analysis and generally weighs very strongly in favor of the lender's decision to declare default and proceed with foreclosure.
 {¶ 34} A third distinction between Rosselot and the instant case is that, in Rosselot, the debtor eventually paid off all the late installments and kept the loan current throughout the course of the foreclosure litigation. Rosselot, supra, at 107. The Rosselot court considered this to be an equitable factor weighing in the debtor's favor. In the instant case, it is undisputed that Appellants have not made any payments on the loan since early April of 1998, nor have they made alternate arrangements to keep current with the loan, such as creating an escrow account or depositing the money with the court.
 {¶ 35} Fourth and finally, Appellants contend that their situation is similar to the situation in Rosselot because the Bank failed to notify them that they were in default. Appellants assert that their payment in early April of 1998 brought their account to current status and out of default, and that they were never notified again that they were in default when they failed to pay the May and June loan payments. Appellants compare this to Rosselot, in which the lender failed to give any notice of default prior to the foreclosure action being filed. It must be noted that Appellants should have been well aware that the Bank was requiring full compliance with the terms of the loan, regardless of any history of accepting late payments, when it notified them by letter in February of 1998 that the loan was in default and was being accelerated. Furthermore, the loan itself contains a cognovit provision in which Appellants waived the right to any notice of default, and they agreed that legal proceedings could be taken against them even without their knowledge if they failed to pay their installments on time. The Bank was not required to give Appellants any further notice of default even if it can be construed that they were completely current on all their obligations in early April, 1998.
 {¶ 36} It is clear that Appellants were in default when the foreclosure action was filed, and that the Bank had not waived any right to act upon that default even though it had accepted some prior late payments. Neither can the Bank's decision to retain two conditional payments be construed as being somehow inconsistent with its decision to declare default and proceed with foreclosure. The checks were presented as an offer to change the terms of the loan, and while the Bank was considering those terms, Appellants defaulted on the loan once again. We conclude that, although harsh, the trial court was within its equitable authority to grant judgment to Appellee based upon the clear language of the loan and mortgage agreements, and based on the facts of this case. Accordingly, Appellants' assignments of error are overruled, and the judgment of the trial court is affirmed.
Vukovich, J., concurs.