[Cite as *PHH Mtge. Corp. v. Barker*, 190 Ohio App.3d 71, 2010-Ohio-5061.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### VAN WERT COUNTY

PHH MORTGAGE CORPORATION,          CASE NO. 15-10-01

   APPELLANT,

 v.

BARKER ET AL.,                                    O P I N I O N

   APPELLEES.

Appeal from Van Wert County Common Pleas Court
Trial Court No. CV 07-11-459

**Judgment Affirmed**

**Date of Decision:  October 18, 2010**

APPEARANCES:

    **Sandor W. Sternberg,** for appellant.

    **Martin D. Burchfield,** for appellee.

    SHAW, **Judge.**

{¶ 1} Plaintiff-appellants, PHH Mortgage Corp. ("PHH"), appeals the December 7, 2009 judgment of the Van Wert County Court of Common Pleas reinstating the mortgage between PHH and defendants-appellees, Denise and Robert Barker, on the Barkers' home.

{¶ 2} On December 22, 2005, the Barkers executed a note and a mortgage in the sum of $34,200 with First Financial Bank, N.A ("First Financial"). The note required the Barkers to pay First Financial 360 monthly payments of $227.53. On May 1, 2007, the Barkers failed to make the required monthly payment. Denise Barker testified that she suffered from an illness during this time that prevented her from contacting First Financial about the missed payments until July 2007, when her health improved. Denise attempted to contact a representative at the local First Financial branch in Van Wert. Denise testified that she left several voicemail messages about the missed payments with different First Financial representatives but none of her calls were returned.

{¶ 3} Eventually, Denise drove to a First Financial branch in Paulding, located in a neighboring county, where the person who originally worked on the mortgage was now employed.[1] The Paulding representative

---

[1] Denise testified at trial that the original mortgage on the house was in favor of an entity named First Community sometime in 2004. In 2005, First Financial became the successor-in-interest to First Community on the loan, and at that time, the Barkers refinanced their home with First Financial by executing the mortgage and note at issue in this case.

gave Denise the name of another representative in a different office to contact about "loss mitigation"—an assistance program that helps the homeowner cure the default and bring the mortgage current. Denise contacted this person, who walked her through the loss-mitigation-assistance process and informed her that she would be receiving a loss-mitigation packet in the mail.

{¶ 4} On July 31, 2007, First Financial sent a letter to the Barkers notifying them that as of May 1, 2007, payment on their mortgage remained due and owing. In the letter, First Financial also offered assistance to the Barkers if they were experiencing difficulties maintaining their monthly payments.

{¶ 5} In early August 2007, the Barkers received a loss-mitigation packet from an entity called "Mortgage Service Center," which was affiliated with First Financial. The materials in the packet requested the Barkers to provide specific information so that the Mortgage Service Center could review the Barkers' financial situation. Based on the information provided by the Barkers, the Mortgage Service Center would determine whether they qualified for a "Workout Option to Avoid Foreclosure." The Barkers completed the materials in the loss-mitigation packet and mailed the packet to the Mortgage Service Center on August 17, 2007.[2]

---

[2] The Barkers also included a letter with the materials that further explained the condition of their financial hardship. Denise Barker suffered from an illness that caused her to be absent from work for long periods of time. This eventually resulted in her termination from that job and the Barkers' temporary inability to pay the mortgage. However, the Barkers informed First Financial that Denise's health had since improved, enabling her to secure a new job. They asked for First Financial's assistance and expressed their desire to remedy the default issue as soon as possible.

**{¶ 6}** On August 20, 2007, First Financial sent a letter to the Barkers notifying them that their mortgage was in default. The letter further demanded that the Barkers pay $1,288.64 in 30 days to avoid the initiation of foreclosure proceedings. On August 29, 2007, a second notice of default was sent to the Barkers.

**{¶ 7}** Shortly thereafter, the Barkers received a "coupon book" in the mail that listed a new monthly payment on the mortgage in the amount of $312.06 if paid by the first of the month or a payment of $322.16 if made by the 16th of the month. The first payment coupon was dated for October 1, 2007. Denise testified that the coupon book arrived by itself with no other correspondence to provide further explanation. Denise stated that when she received this coupon book, she believed that the mortgage had been reset as a result of the previously mentioned loss-mitigation questionnaire sent to the Mortgage Service Center, because the first payment coupon listed a new due date and the monthly payment amount had been increased.

**{¶ 8}** Denise testified that she made a payment of $400 at the end of August 2007 and another payment in the same amount in September.[3] On October 1, 2007, Denise used the new coupon book to tender a payment of $400 to a local First Financial branch office in Van Wert. Denise testified that every time she made a payment, she did so in person at the local branch and that she always either paid in cash or had the teller deduct

---

[3] Denise's testimony is the only evidence of payments made in August and September 2007. The coupon book corresponding to the payments for these months was not presented as evidence at trial. However, PHH did not present any evidence to refute Denise's testimony that she made the payments as she stated. At trial, a "Loan History Record" was entered into evidence by PHH. However, the document listed only the activity on the loan

the payment amount from her paycheck. The teller would accept the payment and give Denise a receipt for the transaction. Denise kept the receipts in the coupon book.

{¶ 9} On October 22, 2007, First Financial sent a letter from its corporate office in New Jersey to the Barkers with a check enclosed in the amount of $322.16. The letter informed the Barkers that the money was being returned because their mortgage remained in default and was pending review by the foreclosure department. On October 29, 2007, First Financial sent a second letter with a check for $477.84 enclosed informing the Barkers that the money was returned because the mortgage remained in default and foreclosure proceedings were still pending. However, the Barkers testified that they never received either the letters or the checks. Moreover, no evidence was presented at trial that these checks were ever cashed.

{¶ 10} On October 29, 2007, Denise made another payment in the amount of $800 to First Financial's local branch in Van Wert, using the coupon book. Again, the teller processed the payment and gave Denise a receipt for the transaction.

{¶ 11} On November 7, 2007, PHH,[4] the appellant in this case, filed a complaint in foreclosure against the Barkers based on their default on the mortgage with First Financial. During this time, Denise testified, she continued to have communications with the loss-mitigation department, who sent her another packet of paperwork to complete

---

from December 30, 2005, to June 1, 2007—there was no similar document introduced at trial which recorded the loan activity past June 1, 2007; the time period crucial to this case.
[4] PHH is also located in New Jersey and is affiliated with First Financial.

and return. Denise testified that on November 10, 2007, she mailed the second set of loss-mitigation materials to First Financial.

{¶ 12} On November 14, 2007, PHH sent a letter to the Barkers with a check refunding a payment of $800. This letter was the first time PHH formally communicated with the Barkers. Unlike the previous two letters sent by First Financial, this letter indicated that the account had "been referred to an attorney to handle the foreclosure process." The letter further directed the Barkers to call the loss-mitigation department to learn about assistance programs to help bring the mortgage current. However, the Barkers testified that they did not receive this letter at this time. Denise testified that she received this refund check nearly five months later, in late February or early March of 2008.

{¶ 13} In December 2007 and January 2008, Denise continued to make payments on the mortgage to First Financial's local branch using the coupon book. Just as before, the First Financial teller processed the payment and gave Denise a receipt for the transaction. Denise made two additional payments in this manner each in the amount of $400 on December 11, 2007, and January 3, 2008. There was no attempt by First Financial/PHH to return either of these payments.

{¶ 14} On February 4, 2008, when Denise attempted to tender a payment of $400 to First Financial, the teller at the local First Financial branch refused to accept the payment, at the direction of PHH. The teller gave Denise a Cleveland telephone number

to call for further information on the matter.[5]  Denise testified that she had called the number expecting a representative of the bank to answer and offer her some assistance. However, the number given to Denise belonged to an attorney who informed her that the account was in the process of foreclosure.  Shortly thereafter the Barkers retained counsel.

{¶ 15} On March 14, 2008, PHH filed a motion for summary judgment claiming that the Barkers were in default on their mortgage, giving PHH the absolute right to accelerate the mortgage and institute foreclosure proceedings on the property.  On March 20, 2008, the Barkers filed a response to PHH's motion for summary judgment alleging that genuine issues of material fact remained.  Specifically, the Barkers alleged that the coupon book was issued after their communications with First Financial, and therefore, the parties understood that the mortgage was reinstated.  Based on this belief, the Barkers began making payments pursuant to the newly issued coupon book, and those payments were accepted by First Financial until February 2008.  The Barkers attached the affidavit of Robert Barker in support of their memorandum in opposition to summary judgment. On April 2, 2008, PHH filed a reply to the Barkers' response to its motion for summary judgment.  PHH objected to the use of Robert Barker's affidavit as the only evidence to establish a dispute of fact.

---

[5] At trial, the coupon book was admitted into evidence.  There were five payment coupons detached from the coupon book.  Four of the coupons were replaced with receipts from the First Financial local branch that demonstrated that Denise had made the following payments at the teller's counter on the corresponding dates:  October 1, 2007, $400.00; October 29, 2007, $800.00; December 12, 2007, $400.00; January 3, 2008, $400.00.  The fifth detached

{¶ 16} Before the trial court made its ruling on PHH's motion for summary judgment, the Barkers filed a Chapter 7 bankruptcy petition and the matter was stayed pending the disposition of the bankruptcy proceedings. Notably, during the pendency of the court proceedings, the loss-mitigation department continued to send Denise paperwork, which she dutifully completed and returned.

{¶ 17} On July, 28, 2008, the trial court overruled and "dismissed" PHH's motion for summary judgment finding the existence of a genuine issue of material fact in dispute.

{¶ 18} Over a year later, on October 20, 2009, the trial court conducted a bench trial. Denise and Robert Barker both testified. Deborah Johnson, a representative of PHH, also testified as PHH's custodian of business records. Johnson identified and attested to the contents of several documents kept in the possession of PHH. Johnson testified that the Barkers' loan was sold by First Financial to PHH on June 1, 2007—a month after the Barkers' first missed payment. Johnson further testified that the formal assignment of the note and mortgage from First Financial to PHH did not occur until November 2007. However, there was no evidence presented that the Barkers were informed of either the sale or the assignment of the note and mortgage to PHH.

{¶ 19} Johnson also testified that there was evidence in an account log called a "letter log" indicating that a coupon book was requested by the Barkers and generated on August 16, 2007. Johnson confirmed that three payments were returned to the Barkers in

---

coupon remained in the coupon book with the notation written by Denise indicating that the bank had refused payment on February 4, 2008, and that the teller had given her a Cleveland phone number to call.

October and November 2007, but Johnson stated that she had no way of knowing if the checks had been cashed. Johnson also testified that the letter log she brought with her to trial primarily tracked the Barkers' communications with First Financial/PHH's collection department. Johnson further testified that any communications the Barkers may have had with First Federal/PHH's loss-mitigation department would not necessarily be catalogued in the collections department letter log but rather would be tracked in another letter log kept by the loss-mitigation department. However, Johnson did not have the loss-mitigation department's "letter log" with her at trial to be able to testify about its contents.

{¶ 20} After the conclusion of the testimony, the court requested that the parties submit their respective findings of fact and conclusions of law. On December 7, 2009, the trial court entered the following ruling in this case via its judgment entry:

> The court having considered the evidence and the equity of the situation finds that the [Barkers] entered into a reasonable interpretation of their communication with First Financial Bank and attempted to follow through on that interpretation until prevented from doing so by [PHH].
>
> The court, therefore, finds it is equitable and in the best interests of justice, and hereby orders that the mortgage and the note be reinstated at the amount owed by the [Barkers] to [PHH] as of October 1, 2007.

{¶ 21} PHH now appeals from this judgment, asserting three assignments of error.

Assignment of Error No. I

The trial court erred in overruling and "dismissing" appellant's motion for summary judgment where the appellant properly demonstrated the non-existence of any genuine issue of material fact concerning appellee's default.

### Assignment of Error No. II

The trial court erred in overruling and "dismissing" appellant's motion for summary [sic] by construing the evidence to find the existence of an agreement to modify the subject mortgage loan agreement in the absence of any admissible evidence demonstrating modification of a contract according to law

### Assignment of Error No. III

The trial court erred in entering judgment against the appellant and ordering "reinstatement" of the subject mortgage loan agreement to a date clearly in default, thereby improperly reforming the parties' agreement.

*The First and Second Assignments of Error*

{¶ 22} Initially, we elect to discuss PHH's first two assignments of error together because they both concern the trial court's decision to deny its motion for summary judgment.

{¶ 23} An appellate court reviews a grant of summary judgment de novo, without any deference to the trial court. *Conley-Slowinski v. Superior Spinning & Stamping Co.* (1998), 128 Ohio App.3d 360, 363, 714 N.E.2d 991; see also *Hasenfratz v. Warnement*, 3d Dist. No. 1-06-03, 2006-Ohio-2797, citing *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 572 N.E.2d 198. A grant of summary judgment will be affirmed only when the requirements of Civ.R. 56(C) are met. This requires the moving party to establish (1) that there are no genuine issues of material fact, (2) that the moving

party is entitled to judgment as a matter of law, and (3) that reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, that party being entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C); see *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus.

{¶ 24} The party moving for summary judgment bears the initial burden of identifying the basis for its motion in order to allow the opposing party a "meaningful opportunity to respond." *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 526 N.E.2d 798, syllabus. The moving party also bears the burden of demonstrating the absence of a genuine issue of material fact as to an essential element of the case. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292, 662 N.E.2d 264. Once the moving party demonstrates that he is entitled to summary judgment, the burden shifts to the nonmoving party to produce evidence on any issue which that party bears the burden of production at trial. See Civ.R. 56(E).

{¶ 25} In ruling on a summary-judgment motion, a court is not permitted to weigh evidence or choose among reasonable inferences, rather, the court must evaluate evidence, taking all permissible inferences and resolving questions of credibility in favor of the nonmoving party. *Jacobs v. Racevskis* (1995), 105 Ohio App.3d 1, 7, 663 N.E.2d 653. Additionally, Civ.R. 56(C) mandates that summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, written admissions, affidavits,

transcripts of evidence, and written stipulations of fact show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

{¶ 26} As the basis for these assignments of error, PHH asserts that the affidavit of Robert Barker that was submitted in support of the Barkers' memoranda opposing summary judgment was insufficient to create a dispute of fact to defeat summary judgment. PHH claims that Robert's affidavit is flawed because it failed to designate specific facts in conflict and contained only unsupported allegations in response to PHH's motion for summary judgment. PHH also asserts that Robert's affidavit failed to comply with requirements set forth in Civ.R. 56(E)

{¶ 27} Robert's affidavit contained the following statements:

1. Now comes Robert D. Barker, Jr. and states that the following is true to the best of his knowledge and belief:

2. The Defendants Robert D. Barker, Jr. and Denise Barker were reissued a payment book on October 1, 2007

3. They understood that this was a redrafting of their mortgage and that they were to go forward in a current status.

4. They had already paid extra against their mortgage prior to having a default status prior to October 1, 2007.

5. The bank accepted their payments from October 2007 through January 2008 when the bank then returned a payment.

6. They believed that the parties had made their mortgage current as a result of the correspondence with the company and the issuing of the mortgage book in October of 2007.

{¶ 28} In reviewing the contents of the affidavit, even assuming arguendo that the second and fifth statements relating the Barkers' understanding that the mortgage was redrafted and their belief that they were current on their mortgage fail to designate a dispute of fact and merely aver unsupported allegations, we conclude that the remaining three statements specifically raise factual issues that disputed PHH's assertion that the Barkers were in default on their mortgage. In particular, the core factual issue of whether the Barkers were in default is placed directly into question when the Barkers were issued a new coupon book and continued to make monthly payments on the mortgage and those payments were accepted by First Financial/PHH for five months after the alleged default. Therefore, we cannot find error or any abuse of discretion in the trial court's conclusion that on the whole, the statements contained in Robert's affidavit were within Robert's personal knowledge and were sufficient to designate specific genuine issues of material fact.

{¶ 29} PHH further asserts that Robert's affidavit is insufficient to comply with Civ.R. 56(E) because there are no supporting documents attached to the affidavit. Civ.R. 65 provides:

> (E) Form of affidavits; further testimony; defense required
>
> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit. Sworn or certified copies of all papers or parts of papers referred to in an affidavit shall be attached to or served with the

affidavit. The court may permit affidavits to be supplemented or opposed by depositions or by further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party.

{¶ 30} As stated above, the rule sets forth the requirement that certified copies of all papers or parts of papers referred to in an affidavit shall be attached to or served with the affidavit. However, the rule provides no sanction for a party's noncompliance with this requirement. Therefore, we believe that the determination whether a party's affidavit substantially complies with this provision of the rule or whether the attachment of documents, the contents of which may be readily ascertainable from other records, is truly essential to the validity of the allegations remains within the discretion of trial court. Therefore, these determinations may be decided by the trial court on a case-by-case basis.

{¶ 31} Moreover, Robert's statements concerning the new coupon book, the additional payments made on the mortgage, and the subsequent acceptance of the payments were facts easily verified with documents at PHH's disposal.[6] Furthermore, there was ample evidence before the court that several issues of material fact remained concerning the precise nature of the communications between the Barkers and First Financial/PHH. Therefore, we do not find that the omission of documents that were

---

[6] At trial, PHH's record keeper had documentary evidence that a coupon book was requested by the Barkers in August 2007 as well records demonstrating that the Barkers made five additional payments that were accepted by

-14-

readily accessible to both parties constitutes a sufficient reason to conclude that the trial court erred in its decision to accept Robert's affidavit as substantially complying with the requirements of Civ.R. 56(E).

{¶ 32} We are further reminded that in deciding whether there exists a genuine issue of fact, the evidence must be viewed in the nonmovant's favor. Civ.R. 56. Therefore, even the inferences to be drawn from the underlying facts contained in the affidavits and depositions must be construed in the nonmoving party's favor. *Turner v. Turner* (1993), 67 Ohio St.3d 337, 341, 617 N.E.2d 1123.

{¶ 33} In sum, the record reveals that there was substantial circumstantial evidence before the trial court that First Financial/PHH had made several material representations to the Barkers through communications with local branch representatives and the actions by the loss-mitigation department that First Financial would assist the Barkers in avoiding foreclosure. After construing the evidence most strongly in favor of the Barkers as required by Civ.R. 56(C), we find that reasonable minds could reach a different conclusion on the issue of whether the Barkers were in default. Therefore, we conclude that the trial court did not err in finding that a genuine issue of material fact remained in overruling PHH's motion for summary judgment. Accordingly, the first two assignments of error are overruled.

*The Third Assignment of Error*

---

First Financial/PHH after the coupon book was issued and that First Financial/PHH attempted to return only three of the five of these payments.

{¶ 34} In its third assignment of error, PHH asserts that the trial court erred in ordering the reinstatement of the Barkers' mortgage. Specifically, PHH contends that the trial court committed improper judicial "making of a contract" when it found an agreement between the parties to modify and reinstated the mortgage.

{¶ 35} Under applicable Ohio law, a foreclosure involves a two-step process. Once it has been determined as a matter of law that a default on the obligation secured by the mortgage has occurred, the court must then consider the equities to determine if foreclosure is the appropriate remedy. See *First Knox Natl. Bank v. Peterson*, 5th Dist. No.08CA28, 2009-Ohio-5096, ¶ 18, citing *Rosselot v. Heimbrock* (1988), 54 Ohio App.3d 103, 105-106. Moreover, because foreclosure is equitable relief, "the simple assertion of the elements of foreclosure does not require, as a matter of law, the remedy of foreclosure." See *First Natl. Bank of Am. v. Pendergrass*, 6th Dist. No. E-08-048, 2009-Ohio-3208, ¶ 22. Therefore, as an equitable action, a foreclosure action should be reviewed for abuse of discretion. See *Buckeye Retirement Co., L.L.C. v. Walling*, 2d Dist. No. 05 MA 119, 2006-Ohio-7059, ¶ 16. "Abuse of discretion" connotes more than an error of law or judgment; rather, it implies an unreasonable, arbitrary, or unconscionable attitude. Id.

{¶ 36} In the instant action, the trial court specifically addressed the equities involved in this action and highlighted the extremely unique circumstances presented by

the facts of this case. The court made the following observation at the conclusion of the trial:

> [The Barkers] made every effort to try to get this loan back unlike the other ninety-nine percent of the foreclosure cases that I have. These people have tried to get back on track and get the thing reinstated and made what appears to me to be a good faith effort to do that.

{¶ 37} The trial court further addressed its evaluation of the equities in determining whether foreclosure was the appropriate remedy under these specific facts in its judgment entry:

> A foreclosure requires a two step process. Once the Court has determined a default on an obligation secured by a mortgage they [sic] must then consider the equity of the situation in order to decide if foreclosure is appropriate. It is not enough the contract was breached and the bank can enforce the contract. The Court has to look at whether it is equitable to take the house of the Defendants under the circumstances.
>
> The [Barkers] testified about the efforts they made to pay this mortgage, the efforts they made to enter into a modification of the mortgage, and the efforts they went to after receiving a mortgage coupon book to maintain payments on their mortgage. Believing that they had reach[ed] [an] understanding they made payments pursuant to the coupon book they had received from First Financial Bank prior to October 1, 2007, and the First Financial Bank at first accepted the payments. It was at the direction of [PHH] that First Financial Bank eventually refused to accept [the Barkers'] payments on and after February 4, 2008.

{¶ 38} The evidence at trial revealed that the Barkers were receiving conflicting communications from First Financial/PHH concerning their mortgage, which obfuscated the situation. On the one hand, First Financial sent the Barkers letters informing them that their loan was in default. Most of these letters were received by the Barkers at the

same time they were communicating with the loss-mitigation department about curing the default. It was shortly after receiving the second notice of default that the Barkers received the coupon book purporting to reset the mortgage payments for a new amount beginning October 1, 2007. The evidence showed that it was the Barkers' communication with the loss-mitigation department that resulted in the issuing of a new coupon book.

{¶ 39} Using this coupon book, the Barkers made four payments totaling $2,000—more than the $1,288.64 needed to cure the default—over a period of five months, and the payments were unconditionally accepted by First Financial. Despite PHH's evidence showing that letters containing refunded payments were sent to the Barkers, there was no evidence that the Barkers actually received them. Indeed, the Barkers testified under oath that they never received two of the three letters with the returned payments. The Barkers admitted to receiving the third letter from PHH but not until late February of 2008, when this action was already before the court.

{¶ 40} Denise Barker testified that she was dumbfounded when she received a complaint in foreclosure in November of 2007 from PHH. However, at that time, she did not know who PHH was or what its relation was to First Financial because she had never received any notice of the assignment of her mortgage. Thus, believing that her mortgage with First Financial was still in place, she continued to make payments on the mortgage. Notably, even after the Barkers became actively involved in the lawsuit, First Financial's

loss-mitigation department continued to send the Barkers paperwork throughout the foreclosure proceedings with PHH.

{¶ 41} Based on the record before us, we conclude that there was ample evidence to support the trial court's decision that the equitable principles implicated in this case warranted a reinstatement of the Barkers' mortgage. Further, we find no error in the trial court's order to reinstate the mortgage as of October 1, 2007, because this is the last communication from First Financial/PHH containing the terms of the revised payment schedule on the mortgage. Accordingly, PHH's third assignment of error is overruled.

{¶ 42} For all these reasons, the judgment of the Van Wert County Court of Common Pleas is affirmed.

Judgment affirmed

WILLAMOWSKI, P.J., and PRESTON, J., concur.