[Cite as *Waterford Pointe Condominium Assn. v. Reserve Domiciles, Ltd.*, 2019-Ohio-691.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

WATERFORD POINTE CONDOMINIUM
ASSOCIATION

    Appellee

    v.

RESERVE DOMICILES, LTD., TRUSTEE
FOR PHOENIX DIVERSIFIED AND
SHIMODA (A DELAWARE PURE
TRUST), et al.

    Appellant

C.A. No.    28766


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV-2015-01-0624

DECISION AND JOURNAL ENTRY

Dated: February 27, 2019

CARR, Presiding Judge.

{¶1}    Appellant, Reserve Domiciles, Ltd., appeals the judgment of the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2}    This foreclosure action arises out of a dispute between Waterford Pointe Condominium Association ("Waterford Pointe"), located in Twinsburg, Ohio, and one of its members and unit owners, Reserve Domiciles, Ltd. ("Reserve"). Reserve has owned one of the units in Waterford Pointe since 1998. Upon purchasing the property, Reserve became subject to the terms and conditions set forth in Waterford Pointe's declaration and bylaws.

{¶3}    Members are required to pay monthly assessments that are determined by Waterford Pointe's board of directors. In 2007, Waterford Pointe approved a revised collection

policy stating that monthly assessments are due on the first day of each month. The monthly assessments are deemed late if not postmarked by the 15th day of each month. Members who fail to pay their monthly assessments on time are assessed an administrative late fee of $25.00 per month.

{¶4} Upon receiving its monthly invoice for maintenance fees, Reserve has consistently presented a check containing the following language:

> Tendered for maintenance fee (MONTH, YEAR), only, not for any other purpose, 3011 Waterford.

Reserve tendered checks for the assessment amount reflected in the invoice and included a reference to the month for which the payment was being made. From January 2009 through June 2012, Reserve was late in paying its monthly assessment on a limited number of occasions. During that timeframe, Waterford Pointe accepted and cashed Reserve's checks containing the aforementioned language.

{¶5} In 2012, the monthly assessment for members was $302.79. Reserve failed to make a timely payment for its monthly assessment in April of 2012 and its account became delinquent at that time. In 2005, the board of directors amended the bylaws so that, in accordance with R.C. 5311.18(A)(2), Waterford Pointe would credit payments made by unit owners in the following order:

> (a) First, to interest owed to [Waterford Pointe];
>
> (b) Second, to administrative late fees owed to [Waterford Pointe];
>
> (c) Third, to collection costs, attorney's fees, and paralegal fees incurred by [Waterford Pointe]; [and]
>
> (d) Fourth, to principal amounts the unit owner owes to [Waterford Pointe] for common expenses or penalty assessments chargeable against the unit.

Waterford Pointe credited a partial payment by Reserve on May 4, 2012. In accordance with the order of priority set forth in the bylaws, the partial payment was applied first against the administrative late fee, the outstanding April assessment, and then the balance was applied to the principal due for the May 2012 assessment. After allocating the money in that order, there was unpaid principal balance due for the May assessment of $25.00. Waterford Pointe levied a June assessment on the account in the amount of $302.79, for a total balance of $327.79. In June, Reserve tended a check for $302.79 that stated, "Tendered for June 2012 maintenance fee only, not for late fees or any other purpose, for 3011 Waterford."

{¶6} Starting in June 2012, Waterford Pointe received and returned all of Reserve's checks tendered for monthly maintenance assessments. Reserve continued to tender checks that contained the restrictive language set forth above. In returning Reserve's check in June 2012, Waterford Pointe communicated its position that it could not accept payments that included qualifying endorsements or restrictions due to the delinquency. In July 2012, Reserve's delinquency increased to $655.58 as it encompassed the carry-over balance from May 2012; June's monthly assessment, June's administrative late fee, as well as the monthly assessment for July 2012. Reserve tendered a check specifically for the July monthly assessment that contained restrictive language specifying that the check was for the maintenance fee only. Waterford Pointe's property manager sent a letter that explained the order of priority for allocating payments and included copies of Waterford Pointe's collections policy. In August 2012, Reserve again tendered a check in the amount of $302.79 that included the restrictive language. Waterford Pointe again returned the check and advised Reserve that it would continue to return checks that included restrictive language. Waterford Pointe further informed Reserve that it

needed to bring the amount current. Reserve's delinquency was $1009.37 as of August 30, 2012. Waterford Pointe's attorney sent Reserve a collections letter at that time.

{¶7} In the ensuing months, Reserve's delinquency continued to increase. Waterford Pointe's attorney repeatedly sent letters encouraging Reserve to bring the amount current. Reserve continued to tender checks with restrictive language. In March 2013, Waterford Pointe sent its seventh letter to Reserve and offered to waive late fees and legal costs if Reserve tendered a check in the amount of $2,743.29 that covered all delinquent assessments. In June 2013, Waterford Pointe sent another letter with a similar offer regarding the waiver of late fees and legal costs and noted that if Reserve did not pay the past due assessments, Waterford Pointe would file a lien against the property. The letter also specified that Waterford Pointe's refusal to accept Reserve's checks with the restrictive language did not constitute a discharge of Reserve's delinquency. In March 2014, Waterford Pointe through counsel sent another letter stressing that it could not accept checks with restrictive language. Waterford Pointe explained the need to bring the account current and offered to waive late fees and legal costs for payment of all delinquent assessments, which at that time totaled $6,570.78. Reserve did not remit payment for the outstanding assessments. Waterford Pointe recorded a lien on Reserve's property in September 2014.

{¶8} On January 30, 2015, Waterford Pointe filed a foreclosure complaint against Reserve. Reserve filed an answer generally denying the allegations in the complaint and setting forth numerous counterclaims. Waterford Pointe filed a timely answer denying the allegations set forth in the counterclaims. With leave of court, Reserve filed an amended answer with counterclaims for breach of contract, slander of title, fraud, violation of the contract clauses in

the United States and Ohio constitutions, as well as punitive damages. Waterford Pointe filed an answer to the amended counterclaims.

{¶9} Waterford Pointe filed a motion for summary judgment that was ultimately denied. The trial court issued an order bifurcating the issues before the court and setting a date for a bench trial on the "bifurcated issue of the validity and/or discharge of the lien." The trial court further noted that once the status of the lien had been determined, it would address any remaining causes of action and whether it was necessary to try those issues to a jury.

{¶10} The parties ultimately entered into joint stipulations of facts and submitted joint exhibits. The parties also submitted written final arguments as well as responsive briefs. On March 10, 2017, a magistrate issued a decision with findings of fact and conclusions of law granting judgment in favor of Waterford Pointe. Reserve filed a number of objections to the magistrate's decision. Most notably, Reserve argued that the magistrate failed to accurately set forth the facts as stipulated by the parties and that it had mischaracterized the nature of the dispute. Waterford Pointe filed a brief in opposition to the objections and Reserve replied thereto. On July 27, 2017, the trial court issued a journal entry overruling Reserve's objections and adopting the magistrate's decision. Subsequently, on August 15, 2017, the trial court issued a final decree of foreclosure. The trial court's foreclosure decree indicated that there was no just reason for delay pursuant to Civ.R. 54(B).

{¶11} On appeal, Reserve raises five assignments of error.

II.

**ASSIGNMENT OF ERROR I**

THE LOWER COURT ERRED AND ABUSED ITS DISCRETION IN LIMITING ITS REVIEW OF THE MAGISTRATE'S DECISION TO THE FACTS FOUND BY THE MAGISTRATE CITING APPELLANT'S FAILURE

TO FILE A TRANSCRIPT OR AFFIDAVIT ALONG WITH ITS OBJECTIONS[.]

{¶12} In its first assignment of error, Reserve contends that the trial court erred in refusing to consider its challenge to the magistrate's factual findings. This Court disagrees.

{¶13} As noted above, the parties entered into joint stipulations of fact and submitted joint exhibits to the magistrate. In setting forth factual findings, the magistrate relied both on the joint stipulations as well as the exhibits. Many of Reserve's objections were aimed at challenging the magistrate's factual findings. In overruling Reserve's objections, the trial court noted that "[w]hile joint stipulations of fact and briefs are filed for record within the docket, the joint exhibits presented at the bench trial are not." On this basis, the trial court overruled Reserve's objections to the factual findings and stated that it was limited to reviewing the magistrate's legal conclusions.

{¶14} Reserve argues that the requirements of Civ.R. 53(D)(3)(b)(iii) were not applicable to this case because the parties entered into joint exhibits and joint stipulations. Civ.R. 53(D)(3)(b)(iii) provides that a party filing an objection to a magistrate's factual finding must support the objection with "a transcript of all the evidence submitted to the magistrate relevant to that finding or an affidavit of that evidence if a transcript is not available." The trial court must have a record of the proceedings before the magistrate in order to conduct an independent review. Civ.R. 53(D)(3)(b)(iii) places the burden for providing the transcript of proceedings or an appropriate substitute on the party objecting to the magistrate's factual determinations. *See Welch v. Prompt Recovery Servs.*, *Inc.*, 9th Dist. Summit No. 27175, 2015-Ohio-3867, ¶ 10. The parties filed their joint stipulations on October 18, 2016. Significantly, however, the parties' joint exhibits were not filed at that time. In support of its objections, Reserve neither filed the joint exhibits in the trial court, nor filed an affidavit pertaining to the

contents of those exhibits. Because Reserve did not comply with Civ.R. 53(D)(3)(b)(iii), the trial court was required to accept the magistrate's findings of fact. *Helms v. Stegeman*, 9th Dist. Summit No. 27995, 2016-Ohio-5118, ¶ 13.

{¶15} The first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE COURT ERRED IN FINDING THAT APPELLEE'S LIEN WAS A VALID LIEN ON THE PROPERTY FOR UNPAID MAINTENANCE ASSESSMENTS AS THE SAME IS AN ABUSE OF DISCRETION AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶16} In its second assignment of error, Reserve contends that the trial court erred in concluding that Waterford Pointe had a valid lien on the property. Though Reserve couches its argument in terms of manifest weight and abuse of discretion, Reserve effectively argues that Waterford Pointe did not have a legal basis to refuse to accept Reserve's monthly payments. Reserve maintains that Waterford Pointe was not entitled to a lien on the property because Reserve never defaulted on its monthly assessments.

{¶17} A condominium association's declaration and bylaws serve as a contract between the association and its individual members. *Murtha v. Ravines of McNaughton Condominium Assn.*, 10th Dist. Franklin No. 09AP-709, 2010-Ohio-1325, ¶ 13; *see also Nottingdale Homeowners' Assn., Inc., v. Darby*, 33 Ohio St.3d 32, 35-36 (1987). R.C. 5311.19(A) provides in part that "[a]ll unit owners * * * shall comply with all covenants, conditions, and restrictions set forth in a deed to which they are subject or in the declaration, the bylaws, or the rules of the unit owners association, as lawfully amended."

{¶18} Reserve's primary argument in support of its second assignment of error is that Waterford Pointe did not have a legal justification to refuse acceptance of Reserve's checks. Reserve contends that the restrictive language was not "more restrictive" than the language in the

bylaws and that Waterford Pointe could have simply accepted the checks and allocated the money appropriately. Reserve maintains that Waterford Pointe has shifted the narrative in this case by suggesting that foreclosure is necessary due to Reserve's failure to pay the monthly assessments when, in actuality, the conflict stems from Waterford Pointe's refusal to accept checks.

{¶19} At the outset of our discussion, we are mindful that, like the trial court, this Court is required to accept the magistrate's factual findings because Reserve did not comply with Civ.R. 53(D)(3)(b)(iii). *Welch*, 2015-Ohio-3867, at ¶ 22.

{¶20} In 2012, the monthly maintenance assessment for Waterford Pointe members was $302.79. After reviewing the parties' joint stipulations and exhibits, the magistrate determined that Reserve failed to make a timely payment in April 2012. Pursuant to Waterford Pointe's collections policy, a $25.00 administrative late fee was assessed to Reserve in light of the delinquency. Waterford Pointe's bylaws contained a provision indicating that payments from unit owners shall be credited in the order of priority set forth in R.C. 5311.18(A)(2). In accordance with the order of priority set forth in the bylaws, Reserve's May payment was applied first against the administrative late fee and eventually applied to the principal due for the May 2012 assessment. After allocating the money in that order, there was an unpaid principal balance due for the May assessment of $25.00. The June assessment levied against Reserve reflected the $25.00 deficit for a total balance due of $327.79. For June, Reserve tendered a check for $302.79 that contained restrictive language stating, "[t]endered for June 2012 maintenance fee only, not for late fees or any other purpose, for 3011 Waterford." Waterford Pointe returned the check and notified Reserve that, due to the delinquency on the account, it could not accept any checks with restrictive language in light of the order of priority for

allocating payments set forth in the bylaws. Going forward, the parties were unable to reconcile this issue as Reserve continued to tender checks on a monthly basis with restrictive language. Despite repeated communications where Waterford Pointe explained that it could not accept checks containing restrictive language, Reserve continued to tender checks with the restrictive language and its delinquency continued to increase. Waterford Pointe eventually offered to waive all late fees and legal costs if Reserve would tender a check that satisfied the outstanding delinquency on its account. Reserve declined to present a check for the delinquency on its outstanding assessments.

{¶21} Under these circumstances, Reserve cannot prevail on its argument that Waterford Pointe did not have a valid lien against its property. As a member of Waterford Pointe's condominium association, Reserve was contractually bound to comply with Waterford Pointe's bylaws. *See* R.C. 5311.19(A). Reserve's account became delinquent in April 2012 when it failed to timely pay its monthly assessment and a late fee was assessed accordingly. Reserve tendered a check in June 2012 that did not account for the delinquency and contained restrictive language. In the months that followed, Reserve continued to tender checks with the restrictive language and the amount of the delinquency steadily increased. A condominium association "has a lien upon the estate or interest of the owner in any unit * * * for the payment of any of the * * * expenses that are chargeable against the unit and that remain unpaid for ten days after any portion has become due and payable." *Prescott Green Condominium Assn. v. Walker*, 9th Dist. Summit No. 24948, 2010-Ohio-2572, ¶ 4, quoting R.C. 5311.18(A)(1). "The lien * * * may be foreclosed in the same manner as a mortgage on real property in an action brought on behalf of the unit owners association[.]" *Walker* at ¶ 4, quoting R.C. 5311.18(B)(1). Under these

circumstances, where Reserve did not take the appropriate measures to cure its delinquency, Waterford Pointe had a valid lien on the property.

{¶22} Finally, Reserve's argument that it never actually missed a payment is also without merit. While Reserve disputes the magistrate's finding that it failed to timely remit payment in April 2012, this Court must accept the magistrate's factual findings in light of Reserve's failure to satisfy the requirements of Civ.R. 53(D)(3)(b)(iii). *See Welch*, 2015-Ohio-3867, at ¶ 22. Moreover, though Reserve emphasizes that it continued to tender checks on a monthly basis throughout the timeframe in question, as discussed above, it failed to do so in a manner that complied with Waterford Pointe's bylaws.

{¶23} The second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED IN FAILING TO FIND THAT A COURSE OF DEALING WAS ENTERED INTO BETWEEN THE PARTIES WHICH CAN BE ENFORCE[D] BY THE COURT.

{¶24} In its third assignment of error, Reserve argues that the trial court erred in finding that the parties had entered into a course of dealing when it accepted the checks with the restrictive language in the years leading up to June 2012. In support of this position, Reserve posits that the restrictive language was merely "intended to make sure [Waterford Pointe] complied with the [bylaws] regarding the use of the money it collected" and, for a time, it accomplished that objective. This Court disagrees.

{¶25} A party cannot prevail on a course of dealing theory when there is no evidence demonstrating that the parties intended to alter the terms of their legal relationship. *See generally Westenbarger v. St. Thomas Med. Ctr.*, 9th Dist. Summit No. 16119, 1994 WL 286022, *4 (June 29, 1994). The parties stipulated that "[t]he language that Reserve [] placed on

the back of its checks did not change, amend or modify the contract between the parties." The parties further stipulated that the bylaws "allow [Waterford Pointe] to assess late fees and legal fees to a delinquent account in accordance with its collection policy." Accordingly, the fact that Waterford Pointe accepted checks containing the restrictive language for a period of time did not alter the legal responsibilities of the parties as stated in the bylaws and Reserve's course of dealing argument is without merit.

{¶26} The third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

THE LOWER COURT ERRED IN FAILING TO FIND THAT [WATERFORD POINTE] BREACHED ITS CONTRACT WITH THE APPELLANT.

{¶27} In its fourth assignment of error, Reserve contends that the trial court erred by failing to conclude Waterford Pointe breached its contractual agreement with Reserve. This Court disagrees.

{¶28} This Court has recognized that "[a] foreclosure requires a two[-]step process." (Internal quotations and citations omitted.) *Bank of N.Y. Mellon v. Chappell*, 9th Dist. Lorain No. 17CA011114, 2018-Ohio-1879, ¶ 13, quoting *Natl. City Bank v. Skipper*, 9th Dist. Summit No. 24772, 2009-Ohio-5940, ¶ 25. After the trial court has determined that a party has defaulted on its obligation, it must consider the equities of the situation in order to determine if foreclosure is an appropriate remedy. (Internal quotations and omitted.) *Chappell* at ¶ 13.

{¶29} Reserve effectively renews its position that Waterford Pointe manufactured this dispute and that it could have simply cashed Reserve's checks containing the restrictive language as it had done in the months and years leading up to June 2012. Even assuming that Reserve breached the contract, Reserve maintains that Waterford Pointe could have greatly mitigated its damages if it had simply accepted the checks. Reserve also contends that foreclosure was not an

equitable remedy under the circumstances of this case because it continued to tender checks on a monthly basis.

**{¶30}** As discussed in our resolution of Reserve's second and third assignments of error, Reserve's account became delinquent in April 2012 and Waterford Pointe was not obligated to accept Reserve's checks tendered thereafter that contained restrictive language in contravention of the order of priority set forth in the bylaws. Accordingly, we cannot accept the supposition that Waterford Pointe either breached the contract or failed to mitigate damages after Reserve's breach.

**{¶31}** With respect to Reserve's contention that foreclosure was not an equitable remedy in this case, we are mindful that a trial court's decision regarding whether foreclosure is an equitable remedy is reviewed for an abuse of discretion. *Chappell* at ¶ 14, citing *PHH Mtge. Corp. v. Barker*, 190 Ohio App.3d 71, 2010-Ohio-5061, ¶ 35 (3d. Dist.). In this case, Waterford Pointe engaged in frequent communications with Reserve in an attempt to address the problem with the restrictive language. After Reserve had accrued a sizable delinquency, Waterford Pointe offered to waive late fees and costs if Reserve would tender a check for the outstanding delinquency for its monthly assessments. Waterford Pointe attempted to resolve the issues with Reserve for more than two years. Despite these efforts, Reserve continued its practice of tendering checks on a monthly basis that contained the restrictive language. Under these circumstances, Reserve has not demonstrated that the trial court abused its discretion by concluding that foreclosure was an appropriate remedy.

**{¶32}** The assignment of error is overruled.

## ASSIGNMENT OF ERROR V

THE LOWER COURT FAILED TO FOLLOW THE FACTS, THE CIVIL
RULES AND/OR ABUSED ITS DISCRETION IN FAILING TO GRANT

APPELLANT'S DEMAND FOR A JURY TRIAL AS TO ITS COUNTERCLAIMS[.]

**{¶33}** In its final assignment of error, Reserve contends that its counterclaims should be tried to a jury. On July, 26, 2016, the trial court issued an order bifurcating the issues before the court and noting that the issue of the validity of the lien would be tried to the bench. The trial court further specified that "[o]nce the status of the lien has been determined, the Court can engage in a more detailed analysis and determine whether the remaining causes of action will proceed with a jury or bench trial." On appeal from the trial court's determination that the lien was valid, Reserve argues that if it prevails in this appeal, its counterclaims should be tried to a jury. The instant appeal pertains solely to the trial court's determination regarding the validity of the lien and this Court declines to address issues that fall outside the scope of the instant appeal.

III.

**{¶34}** Reserve's first, second, third, and fourth assignments of error are overruled. We decline to address Reserve's fifth assignment of error as it falls outside the scope of the instant appeal. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the

14

period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT


HENSAL, J.
CALLAHAN, J.
CONCUR.


APPEARANCES:

CLIFFORD THORNTON, Attorney at Law, for Appellant.

ARTHUR TASSI, Attorney at Law, for Appellee.

JOSEPH E. DIBAGGIO, Attorney at Law, for Appellee.

KIMBERLY K. WYSS, Attorney at Law, for Appellee.