[Cite as *M&T Bank v. Wood*, 2020-Ohio-10.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| M&T BANK SUCCESSOR BY MERGER TO M&T MORTGAGE CORPORATION | : | |
| | : | |
| | : | Appellate Case No. 2019-CA-46 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2015-CV-713 |
| v. | : | |
| | : | (Civil Appeal from |
| ROBERT C. WOOD, et al. | : | Common Pleas Court) |
| | : | |
| Defendant-Appellant | | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 3rd day of January, 2020.

. . . . . . . . . . .

MIKE L. WIERY, Atty. Reg. No. 0068898 and KATHERINE D. CARPENTER, Atty. Reg.
No. 0096867, 30455 Solon Road, Solon, Ohio 44139
    Attorneys for Plaintiff-Appellee

DANIEL L. MCGOOKEY, Atty. Reg. No. 0015771 and KATHRYN M. EYSTER, Atty. Reg.
No. 0074696, 225 Meigs Street, Sandusky, Ohio 44870
    Attorneys for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

**{¶ 1}** Robert C. and Ann K. Wood appeal from the trial court's May 16, 2019 judgment entry in favor of M&T Bank, successor by merger to M&T Mortgage Corporation ("M&T") on M&T's foreclosure complaint. We hereby affirm the judgment of the trial court.

**{¶ 2}** On November 9, 2015, M&T filed a complaint for foreclosure "with reformation" against the Woods, the State of Ohio Department of Taxation, and the United States of America. In the first count, M&T alleged that it was the holder of and/or entitled to enforce the promissory note and mortgage deed attached to the complaint. The note, attached as Exhibit A, was dated March 29, 2002; it identified the Woods as borrowers in the amount of $212,900, and M&T Mortgage Corporation as the lender. An "Addendum to Note Construction/Permanent Loan" was attached to the note. The mortgage, attached as Exhibit B, identified the subject property address as 12575 Collins-Arbogast Road in South Vienna, Ohio. Exhibit B further contained documents reflecting the merger of M&T Mortgage Corporation with and into Manufacturers and Trader's Trust Company (also known as M&T Bank) in 2006. Finally, attached as Exhibit C was a Notice of a federal tax lien against the Collins-Arbogast Road property, naming Robert C. Wood as the taxpayer. The complaint provided a lengthy legal description of the property and stated that, "through inadvertence or error," the legal description contained in the mortgage deed did not conform to the legal description set forth in the complaint. The complaint stated that the Woods intended to transfer their interest in the property to M&T, "but that through a scrivener's error, the legal description was not entirely and properly correct." M&T requested reformation of the mortgage deed to include the entire legal description as set forth in the complaint.

{¶ 3} In the second count, M&T alleged that it was entitled to enforce the note because the Woods were in default, and that $211,853.99 was due on the note, plus interest. In the third count, M&T asserted that it was the holder of the mortgage deed securing the payment of the note, and that the mortgage was a "valid and first lien" upon the property.

{¶ 4} A preliminary judicial report was filed on November 9, 2015. The Clark County Treasurer and the U.S. Department of the Treasury filed answers in late 2015, and the Woods filed an answer with a jury demand on December 15, 2015.

{¶ 5} On February 8, 2016, M&T filed a motion for leave to file an amended complaint, in which M&T asserted that it had "lost the Note concerning the loan subject to the foreclosure case" and had not been able to locate it despite its efforts to do so. It therefore sought to amend its complaint "to include and plead a lost Note," as necessary for proper adjudication of the case. On the same day, M&T filed an amended complaint for foreclosure, and the trial court granted the motion for leave to file an amended complaint.

{¶ 6} On March 7, 2016, the Woods filed an answer to the amended complaint. On March 21, 2016, the United States filed an answer to the amended complaint.

{¶ 7} On June 20, 2016, the Woods filed a motion for summary judgment; they also asserted that M&T's complaint should be dismissed with prejudice because it was barred by the applicable statute of limitations, citing R.C. 1303.16(A). The Woods attached Ann Wood's affidavit, which in turn included a letter dated June 23, 2005 from M&T's attorneys regarding the mortgage. (M&T produced the letter in the course of discovery in this case.) The Woods asserted in their motion as follows:

&ast; &ast; &ast; Plaintiff's letter of June 23, 2005 was in satisfaction of the requirement that it give Defendants thirty days written notice of their right to cure the default prior to calling the entire sum due. This being the case, the sending of such notice was a necessary precondition to foreclosure.

The fact that Defendants did not specifically admit *receiving* the 11-year-old letter is of no matter. As indicated in the Affidavit, Defendants received countless pieces of correspondence from Plaintiff since 2005. Certainly, Plaintiff's production of the letter and their Request to Defendants to admit they received it leads to an inference that Plaintiff sent it, thereby choosing to accelerate the date on which the entire balance was due and owing.

{¶ 8} According to the Woods, "[b]ecause Plaintiff accelerated the due date of the subject note on or about July 23, 2005,[1] it began the tolling of the applicable statute of limitation by which the foreclosure had to be filed" pursuant to R.C. 1303.16(A). Thus, the Woods asserted that the statute of limitations ran out on July 23, 2011, six years later after the letter.

{¶ 9} In her affidavit, Ann Woods averred that M&T's request for admission number 25 asked that the Woods admit receiving a letter from M&T dated June 23, 2005, addressed to them at their home address. With respect to this letter, Ann further averred that the Woods had received "countless pieces of correspondence" from M&T in the years since 2005, and therefore "did not have an independent recollection of receiving the letter," as indicated in their answer to M&T's request for admissions.

---

[1] We conclude that the Woods misstate the above date.

{¶ 10} The motion for summary judgment included the June 23, 2005 correspondence from M&T to the Woods (Exhibit C), which provided:

This shall serve as formal notice that you are presently in default under the terms of your Note and Mortgage/Deed of Trust secured by the property referenced above. Specifically, you have failed to make the payments on this Note as agreed.

To cure this default, you must pay the total amount due at this time of $6273.19 PLUS ADDITIONAL PAYMENTS, FEES AND LATE CHARGES THAT BECOME DUE BETWEEN THE DATE OF THIS LETTER AND THE TIME YOUR PAYMENT IS RECEIVED. Such payment must be received in our office within 30 days from the date of this letter. * * *

If you do not cure this default within 30 days from the date of this letter, your obligation for payment of the entire unpaid balance of the loan will be accelerated and become due and payable immediately. Additionally, foreclosure proceedings may be commenced to acquire the Property by foreclosure and sale. * * *

In the event foreclosure proceedings are initiated, you have certain right(s), including the right to argue that you did keep the promises and agreements under the Note and Mortgage/Deed of Trust, to raise any other applicable defense and to reinstate your loan account after acceleration and before sale.

{¶ 11} On July 15, 2016, M&T filed a memorandum contra the Woods' motion for summary judgment. M&T asserted that "the Note was not *accelerated* until the filing of

the instant action, therefore the applicable statu[t]e of limitations did not [begin] to run until 2015," when M&T filed its complaint in foreclosure. Citing Ann's affidavit, M&T asserted that the fact that it sent "countless pieces of correspondence" to the Woods established that M&T *had not* accelerated the amounts due under the note and mortgage; "Had M&T accelerated the Note, their intentions would have been clear, as an action in foreclosure would have been filed." M&T asserted that "binding case law of the Second District Court of Appeals has addressed the issue of acceleration and found that acceleration requires a 'separate act.' "

{¶ 12} On July 26, 2016, the Woods filed a reply brief in support of their motion for summary judgment,[2] asserting that, if "the General Assembly intended the acceleration date to be the filing of the Complaint, then O.R.C. § 1303.16 would be unnecessary in all cases and there would never be applicability with said section." The Woods argued that "[c]orrespondence from a lender does not equal default. This argument is a red herring."

{¶ 13} On December 1, 2016, M&T filed a motion for leave to file a second amended complaint; the motion stated that it was necessary "to plead and include a Final Construction Loan Modification Agreement as part of the Note." The court granted the motion, and M&T filed its second amended complaint for foreclosure on December 7, 2016. The Woods filed an answer on December 19, 2016.

{¶ 14} On June 15, 2017, M&T filed a motion for leave to file a third amended complaint; M&T sought "to reference as an exhibit a prior loan modification which occurred on this loan, and add an additional and alternative count for ejectment to the

---

[2] We note that the reply is captioned "Defendants' Motion for Summary Judgment and Memorandum in Support."

complaint." A copy of a third amended complaint for foreclosure was attached to the motion. The first count was for reformation of the mortgage, and the second count was for a declaratory judgment that the mortgage was "a valid and enforceable, first and best mortgage lien on the entire fee simple interest" of the property. The third count was for default on the note, and a fourth count sought foreclosure of the mortgage. Finally, the fifth count sought "ejectment" of the Woods from the premises and that M&T be given possession of the mortgaged property. A "Note Modification Agreement" dated July 9, 2004, was attached to the complaint, which stated that it "supersede[d] and replace[d] in its entirety that certain Addendum to Note between Borrower and Lender of even date with the Note." A copy of the complaint was filed separately on June 28, 2017, and the court granted the motion for leave on the same day. The Woods answered the complaint on July 11, 2017.

{¶ 15} On August 22, 2018, the court issued a notice to M&T to proceed with the prosecution of this matter within 30 days. On November 19, 2018, M&T filed a motion for summary judgment. M&T asserted that it had established that no genuine issues of material fact existed and that it was is entitled to foreclosure on the property. M&T attached "a true and correct copy of its Lost Note Affidavit in accordance with and pursuant to O.R.C. 1303.38." M&T asserted that the Woods were in default under the note and mortgage and that all conditions precedent to foreclosure under the note and mortgage had been met. M&T asserted that it had presented admissible evidence of the amount owed, that it was is entitled to reformation and/or a declaratory judgment concerning the legal description contained in the mortgage, thus correcting the scrivener's error in the legal description. M&T further asserted that acted on the note within the

applicable statute of limitations, and that the default letter was not an acceleration of the note. M&T asserted that it acted on its mortgage within the applicable statute of limitations and that R.C. 1303.16(A) "only applies to prohibit a party from enforcing obligations to pay on the note." M&T asserted that actions on a mortgage "are separately subject to R.C. 2305.06. This statute was amended from a fifteen (15) year statute of limitations to eight (8) years on September 28, 2012," but that "R.C. 2305.06 is <u>not</u> retroactive in its application." Finally, M&T asserted that it was entitled to summary judgment on its claim for ejectment.

{¶ 16} Attached to the motion was an affidavit of Colette Tobler, a "Banking Officer" for M&T. Tobler's affidavit provided in part as follows:

2. The averments provided in this affidavit are within the scope of my duties. As part of my position, my job responsibilities include, but are not limited to 1) reviewing the internal record-keeping systems of M&T Bank; 2) reviewing the loan documents; and 3) ensuring the completeness and accuracy of the loan documents and loan histories. In the regular performance of my job functions, I have personal knowledge of the business records maintained by M&T Bank for the purpose of servicing mortgage loans. These records (which include loan document[s], data compilations, electronically imaged documents, and others) are made 1) at or near the time of the occurrence of the matters, 2) recorded by persons with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge, 3) kept in the course of M&T Bank's regularly conducted business activities, and 4) created by M&T

Bank as a regular practice. In connection with making this Affidavit, I have personally examined these business records for the loan which is the subject of this case, and I make this Affidavit from my review of those business records and from my personal knowledge of how said records are created and maintained.

3. The business records I reviewed in connection with the making of this Affidavit include but are not limited to the Note (Exhibit "A-1") (which is comprised of the Note, Addendum to Note Construction/Permanent Loan, Construction Loan Agreement, and Note Modification Agreement, collectively herein referred to as "Note"), Lost Note Affidavit (Exhibit "A-2") (which is comprised of Lost Note Affidavit, Note, Addendum to Note Construction/Permanent Loan, Signature/Name Affidavit, and Mortgage, collectively referred to herein as "Lost Note Affidavit"), Mortgage (Exhibit "A-3"), Certificates of Merger (collectively, Exhibit "A-4"), Notices of Default (collectively, Exhibit "A-5"), and Payment History (Exhibit "A-6"). True and accurate copies of the Note, Lost Note Affidavit, Mortgage, Certificates of Merger, Notices of Default, and Payment History are incorporated herein through reference and attached hereto as Exhibits A-1 through A-6, respectively.

4. A review of the business records reveal[s] that Robert C. Wood and Ann K. Wood executed and delivered to M&T Mortgage Corporation a certain note * * * in the original amount of $212,900.00 (See, Exhibit A-1).

5. On March 29, 2009, Robert C. Wood and Ann K. Wood executed

a Mortgage as security for payment of the above-described Note on the real property located as 12575 Collins-Arbogast Road South Vienna, Ohio 45369 * * * (See, Exhibit A-3).

6. Following the execution of the Note and Mortgage for this loan, M&T Mortgage Corporation merged into Plaintiff M&T Bank (See, Exhibit A-4).

7. At the time of the filing of this foreclosure, and continuously since, Plaintiff M&T Bank successor by merger to M&T Mortgage Corporation has been entitled to enforce the promissory Note by virtue of the circumstances attested to in the Lost Note Affidavit * * * . (See, Exhibit A-2).

8. According to M&T Bank's business records, payments have not been made as required under the terms of the Note and Mortgage. The account is presently due and owing for April 1, 2005. (See, Exhibit "A-6").

9. Prior to filing this foreclosure, M&T Bank caused Notice of Default letters dated May 16, 2005, May 24, 2005, and June 23, 2005 to be sent to Borrowers at the Property, via first class mail in accordance with the terms of the Note and Mortgage. (See Exhibit "A-5").

10. Borrowers have not subsequently made payments to bring the loan current or cure the default. Plaintiff has accelerated the account, pursuant to the terms of the Note and Mortgage, making the entire balance due. As a result of the default on the Note and Mortgage, and the acceleration of the debt, there is due and owing a principal balance of $211,853.99, together with interest at the rate of 7.875% per year from

March 1, 2005 or as otherwise adjusted pursuant to the terms of the Note. (See, Exhibit A-6)[.]

* * *

12. M&T Bank has advanced and/or may advance funds for the payment of reasonable and necessary real estate taxes, hazard insurance premiums or otherwise for protection of the property, together with court costs and other expenses incident to this action, the total amount of which will be ascertainable at the time of the foreclosure sale in this matter.

{¶ 17} M&T also attached to the motion for summary judgment a "Lost Note Affidavit" executed by Joshua Wikman, Assistant Vice President of M&T. Wikman stated that he had access to and was familiar with M&T's business records, which were kept "for the purpose of servicing mortgage loans, including the loan that is the subject of this proceeding." Wikman averred as follows:

* * *

4. M&T's regular business is to store notes secured by mortgages and deeds of trust in its Business Records maintained by M&T. After a good faith thorough and diligent annual search of the hard copy Business Records, including the file pertaining to this Loan, the original Note for this Loan was not located and possession of the Note cannot reasonably be obtained as its whereabouts cannot be determined.

5. The Business Records reflect that the Note was in M&T's possession and on behalf and for the benefit of M&T * * * and M&T was entitled to enforce the Note at the time the loss of possession of the Note

occurred.

6. The loss of possession of the original Note is not the result of the original Note being assigned, endorsed, or delivered to another party, cancelled, pledged, hypothecated or otherwise transferred, nor the result of a lawful seizure.

7. A true and correct copy of the original Note, as most recently photo copied by M&T, which is dated March 29th, 2002 identifies M&T as Lender, Robert C Wood and Ann K Wood as Borrowers, and contains a promise by Borrower to "pay U.S. $212,900.00" to lender is attached hereto, incorporated herein, and marked as Exhibit "A".

* * *

{¶ 18} On November 19, 2018, a supplemental final judicial report and a second supplemental final judicial report were filed. On November 29, 2018, M&T filed a notice of filing a lost note affidavit.

{¶ 19} The Woods filed a memorandum in opposition to M&T's motion for summary judgment on April 2, 2019. The Woods asserted that M&T's "proof" was not offered by "witnesses with the requisite personal knowledge" and therefore could not be considered. According to the Woods, M&T had improperly attempted to submit critical documents into the record under the business records exception to the hearsay rule, but the documents nonetheless constituted inadmissible hearsay and could not be considered. The Woods asserted that M&T's affidavits did not satisfy "the necessary assertion in summary judgment affidavits." Further, the Woods asserted that R.C. 1303.16(A) applied and required dismissal of the action. They argued that M&T was not the holder of the note,

that M&T did not establish that it had met the conditions precedent to filing for foreclosure, and that M&T had not established the amount due under the note. Finally, the Woods asserted that, under Ohio law, "considering the equities," foreclosure was not appropriate in this case.

{¶ 20} On April 2, 2019, the Woods filed a motion to strike the affidavit in support of M&T's motion for summary judgment (the affidavit of Colette Tobler). On April 11, 2019, M&T filed a reply in support of its motion for summary judgment and a reply in opposition to the Woods' motion to strike the affidavit.

{¶ 21} On May 16, 2019, the trial court granted summary judgment in favor of M&T. The trial court determined as follows:

> The Court * * * finds that, upon consideration of the Plaintiff[']s MSJ and the Defendants['] MSJ, the affidavits in support, the oppositions and replies filed by the parties, that there are no genuine issues of material fact and Plaintiff is entitled to judgment as a matter of law. * * *
>
> The Court further finds Plaintiff's affidavit submitted in support of Plaintiff's MSJ to be in accordance with Civ.R. 56 and therefore further denies Defendants['] Motion to Strike Affidavit in Support of Plaintiff's Motion for Summary Judgment.
>
> The Court further finds that the Plaintiff has brought this action and all Plaintiff's claims herein within the applicable statutes of limitations and Plaintiff has standing to bring the claims which it asserts. The Court further finds that Plaintiff filed a lost note affidavit in this case and upon review of the same, it conforms in all respects to Ohio Revised Code section 1303.38.

The Court further finds * * * that there is due to the Plaintiff on the Note, Addendum to Note Construction/Permanent Loan, Construction Loan Agreement, and Note Modification Agreement (collectively referred to herein as "Note") set forth in the Third Count of the Third Amended Complaint, the sum of $211,853.99, plus interest at 7.875% per annum from March 1, 2005, for which sum, judgment is hereby rendered in favor of the Plaintiff against the Defendants * * * jointly and severally.

* * *

The Court further finds that in order to secure the payment of the Note, the original mortgagors, [the Woods], * * * executed and delivered to M&T Mortgage Corporation a mortgage as in the Fourth Count of said Third Amended Complaint * * * thereby conveying to it the following described premises * * * :

* * *

The Court further finds that the Mortgage was duly filed with the Recorder of Clark County on April 1, 2002, and thereafter recorded in OR Volume 1527, Page 858 of the Mortgage Records of said County, and thereby became and is a valid first and best mortgage lien upon the Property, subject only to the lien of the Treasurer for taxes; that said conditions in the Mortgage have been broken, and same has become absolute and the Plaintiff is entitled to have the equity of redemption and dower of all the Defendants in and to the Property foreclosed.

The Court further finds upon the Complaint that the legal description

as contained in the Mortgage did not conform to the legal description of the Property which is the subject matter of this action and that it was the intent of the parties to the Mortgage to execute the Mortgage and cause to transfer to Plaintiff all the interest of the Defendants in and to the Property.

The Court therefore further finds and orders that the legal description contained in the Mortgage is hereby reformed and amended to read as set forth in EXHIBIT "A", attached hereto and incorporated herein.

The Court further finds that the Mortgage otherwise correctly and accurately describes the Property "Parcel ID Number 280-15-05872-103-026" * * *.  The Court therefore further finds and declares the Mortgage is a valid and enforceable, first and best mortgage lien on the entire fee simple interest of the Property.

* * *

The Court further finds and takes judicial notice that the State of Ohio, Department of Taxation has a lien against the Property.   None of the parties have challenged the amount, validity, or priority of the lien.  The interest of the state lienholder shall be transferred to the proceeds of sale and will be paid in accordance with the State's priority as set forth in the Preliminary Judicial Report.

The Court further finds that the Defendant, The United States of America, claims some right, title, interest or lien upon the Property, as set forth in its pleading filed herein, but that any right, title, interest, claim or lien that they may have is inferior and subsequent to the lien of the Plaintiff.

The Court makes no finding at this time as to the claim, right, title, interest or lien of the Defendant, The United States of America, as set forth in its pleading filed herein, except to note that such claim, right, title, interest or lien of the hereinabove Defendant is hereby ordered transferred to the proceeds derived from the sale of the Property, after the payment of the costs of the within action, taxes due and payable and the amount hereinabove found due the Plaintiff, and the same is hereby ordered continued until further order.

The Court further finds that the Defendant, The United States of America, shall have the right to redeem within the time periods provided by 28 U.S.C. Section 2410(c).

{¶ 22} The court ordered that unless the amount found to be due was paid within three days from the date of the judgment entry, the "equity of redemption and dower of all the Defendants in and to the Property shall be foreclosed, and the Property sold * * *." Finally, the court found that M&T was entitled to ejectment as requested in its third amended complaint, due to the Woods' default on the mortgage, and that legal title to the property had "been conveyed to [M&T] under the terms of the Mortgage upon the condition of default in payment." The judgment entry provided that "[t]here [was] no just reason for delay" and was stamped "FINAL APPEALABLE ORDER."

{¶ 23} On June 14, 2019, the Woods filed a notice of appeal. On July 22, 2019, this Court issued an order raising a concern as to the finality of the order on appeal:

This court has identified an issue potentially affecting the finality of the order on appeal. Specifically, it appears that the May 16, 2019

Judgment Entry does not resolve an apparent lien on the property by the United States of America. *See Tax Ease Ohio LLC v. Wells*, 2d Dist. Montgomery No. 27920, 2018-Ohio-4346, ¶ 19, 23-24 (foreclosure decree that inadequately dealt with federal government's lien was not final). However, it is not clear whether the Ohio Supreme Court's recent decision in *Farmers State Bank v. Sponaugle*, Slip Op. No. 2019-Ohio-2518 (June 27, 2019) affects this finality analysis. This court lacks jurisdiction to review an order or judgment that is not final. *Gen. Acc. Ins. Co. v. Ins. Co. of N. Am.*, 44 Ohio St.3d 17, 20, 540 N.E.2d 266 (1989).

The parties are therefore ORDERED to address the finality of the order on appeal in their merit briefs. They are reminded that while this appeal is pending, and without a remand from this court, "the trial court is divested of jurisdiction over matters that are inconsistent with the reviewing court's jurisdiction to reverse, modify, or affirm the judgment." *State ex rel. Electronic Classroom of Tomorrow v. Cuyahoga Cty. Court of Common Pleas*, 129 Ohio St.3d 30, 2011-Ohio-626, 950 N.E.2d 149, ¶ 13 * * *.

**{¶ 24}** We note that the Woods disregarded this Court's order to brief the final appealable order issue. M&T did address the issue in its brief, concluding that the court's order was final and appealable.

**{¶ 25}** In *Tax Ease Ohio*, this Court dismissed the appeal of siblings Rick Wells and Joan Wells from the grant of summary judgment in favor of Tax Ease Ohio. Citing *Farmers State Bank v. Sponaugle*, 2d Dist. Darke No. 16 CA 2 (Apr. 18, 2016), and *CitiMortgage, Inc. v. Roznowski*, 139 Ohio St.3d 299, 2014-Ohio-1984, 11 N.E.3d 1140,

¶ 20, this Court noted that "a judgment entry ordering a foreclosure sale is not a final, appealable order unless, among other things, it determines the priority of all liens against the property and the corresponding amounts due the lienholders." *Tax Ease Ohio* at ¶ 12.

{¶ 26} The trial court's entry in *Tax Ease Ohio* was similar to the one herein and provided in part as follows:

* * * The Court finds that Defendant United States of America, claims some right, title, interest or lien upon the premises described, as set forth in their Answers filed herein, but that any right, title, interest, claim or liens said Defendant may have are inferior and subsequent to the lien of the Plaintiff. The Court makes no finding at this time as to the right, title, interest or lien of said Defendant as set forth in its pleadings, except to note that such claim, right, title, interest or lien of said Defendant is hereby ordered transferred to the proceeds derived from the sale of said premises, after the payment of the costs of the within action, taxes due and payable, and the amount found due the Plaintiff, and the same is hereby ordered continued until further order.

*Id.* at ¶ 15.

{¶ 27} In reliance upon *CitiMortgage, Inc. v. Stanley*, 2d Dist. Greene No. 2018-CA-13, 2018-Ohio-4229, this Court conducted the following analysis:

In *Stanley*, the mortgagee filed a foreclosure action naming the homeowners, another bank, the county treasurer, and the homeowners' association as party-defendants; the homeowners' association filed cross-claims for foreclosure and for unpaid lot assessments. In its judgment

entry, the trial court found, in part, that all necessary parties had been served; that the homeowners and the bank had failed to answer and were in default; that the Greene County Treasurer had "a valid and subsisting first lien" against the property for "accrued taxes, assessments and penalties" in an amount that was "unascertainable at [that] time"; and that the plaintiff-mortgagee was entitled to foreclose on the property and to recover $147,655.62, plus interest and advances made "for taxes, insurance and property protection" in an amount that would be determined after confirmation of sale. The court made "no finding" regarding the validity of the homeowners' association's cross-claims, except to note that such claims were "inferior and subsequent" to the plaintiff-mortgagee's lien, and it ordered the cross-claim for unpaid lot assessments "to be transferred to the proceeds derived from the sale" of the property. *Stanley* at ¶ 3.

The homeowners' association later dismissed its cross-claim for foreclosure and sought a default judgment on its claim for unpaid lot assessments. The trial court granted the motion, finding that the association was entitled to recover $4,401, plus interest, costs, and attorney's fees. *Id.* at ¶ 4. The homeowners subsequently appeared and sought relief from judgment, pursuant to Civ.R. 60(B), which the trial court denied. *Id.* at ¶ 5.

On appeal from the denial of their Civ.R. 60(B) motion, we sua sponte ordered the parties to address whether the trial court had issued a final appealable order. Upon consideration of that issue, we concluded

that the trial court's initial judgment entry was not a final appealable order, because it did not confirm the validity of the homeowners' association's lien or specify the amount due on the lien. *Stanley* at ¶ 11. Nevertheless, we noted that the trial court resolved these issues when it granted the association's subsequent motion for default judgment. We thus concluded that the judgment granting the homeowners' association's motion for default judgment was a final appealable order from which the homeowners could seek relief under Civ.R. 60(B). *Id.*

In this case, the trial court's treatment of the possible claim by the United States government suffers the same infirmities as the initial entry regarding the homeowners' association's claim in *Stanley*. The trial court found that the United States government "claim[ed] some right, title, interest or lien upon the premises described," but the trial court made "no finding" that the United States government, in fact, had a valid claim or lien against the Wellses' property, nor did the court specify the amount of the government's claim or lien. In addition, the trial court made no determination of the priority of the lien that the United States government "may have" in relation to the other governmental claimants. Rather, the trial court merely indicated that any possible right by the United States government was subordinate to Tax Ease Ohio's lien, and it ordered "such claim, right, title, interest or lien of said Defendant [* * * to be] transferred to the proceeds derived from the sale of said premises * * *."

*Tax Ease Ohio,* 2d Dist. Montgomery No. 27920, 2018-Ohio-4346, at ¶ 20-23.

**{¶ 28}** This Court concluded that, in the absence of a determination of the validity and priority of the United States' lien, the trial court's judgment entry on appeal was not a final appealable order. *Id.* at ¶ 24. The following was further significant to this Court:

> Moreover, we note that, in her answer, Joan Wells denied that the United States government and the State of Ohio had any lien or other interest in the property and she disputed "all sums claimed by either of them." (Answer ¶ 6.) The Preliminary Judicial Report identified a federal tax lien against Audrey Wells, a prior owner, whose listed address was different from the property at issue; in its answer, the United States stated that "[a]ny interest it has in the property is by virtue of a federal tax lien against taxpayer Audrey Wells." The Notice of Federal Tax Lien itemized four assessments in 2005 and stated that "[f]or each assessment listed below, unless the notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a)." For each assessment listed on the Notice, the last day for refiling in column (e) was a 2015 date; the foreclosure complaint was filed in June 2016. Further, the Preliminary Judicial Report reflected that the liens of the State of Ohio and the Ohio Department of Taxation were based on certificates of judgment against Ricky L. Wells, with no address shown.

(Footnote omitted.) *Tax Ease Ohio* at ¶ 25.

**{¶ 29}** In *Sponaugle*, 157 Ohio St.3d 151, 2019-Ohio-2518, 133 N.E.3d 470, the Ohio Supreme Court "address[ed] once again what constitutes a final, appealable

foreclosure decree." *Id.* at ¶ 1. The Court noted that the Sponaugles' first appeal challenged the trial court's entry of a foreclosure decree in favor of appellant, Farmers State Bank. *Id.* at ¶ 2. The Supreme Court noted that this Court dismissed that appeal for lack of a final, appealable order because the foreclosure decree did not state the amounts owed to two other lienholders. During the first appeal, the Sponaugles property sold at a sheriff's sale. *Id.* at ¶ 2. In a subsequent appeal, the Sponaugles challenged the trial court's order confirming the sale of the property. The Supreme Court noted that this Court "concluded that the law-of-the-case doctrine required adherence to its earlier decision that the foreclosure decree was not a final, appealable order. In the absence of a final, appealable order, [this Court] held that the trial court had no authority to confirm the sale." *Id.* at ¶ 3. The Supreme Court reversed this Court, and concluded that the foreclosure decree against the Sponaugles was a final, appealable order, and reinstated the trial court's confirmation of sale. *Id.* at ¶ 4.

{¶ 30} The *Sponaugle* Court, citing *CitiMortage, Inc. v. Roznowski*, 139 Ohio St.3d 299, 2014-Ohio-1984, 11 N.E.3d 1140, conducted the following analysis:

> *Roznowski* involved a foreclosure decree that included in its damage award the future expenses incurred by the bank for inspections, appraisals, property protection, and maintenance. Even though the decree did not specify the amount of these liabilities, we concluded that it was a final, appealable order: "Each party's rights and responsibilities were fully set forth - all that remained was for the trial court to perform the ministerial task of calculating the final amounts that would arise during confirmation proceedings[.]" [*I*]*d.* at ¶ 20.

Likewise, the foreclosure decree here resolved all the rights and liabilities of the parties. The failure to set out the amount of taxes due to the county does not render the foreclosure decree interlocutory. A court cannot state with certainty the accrued taxes due at the time of a foreclosure decree, since that amount will likely change depending on how long it takes to sell the property. Here, for example, the trial court noted that the amount of taxes due at the time of the foreclosure decree had changed by the time the court entered the confirmation of sale. No judgment of foreclosure and sale would ever be final if we required courts to compute taxes and all future costs as a prerequisite for finality. *Id.* at ¶ 16. If a dispute as to the final amounts due does arise, then parties may challenge those amounts by appealing the confirmation of sale. *Id.* at ¶ 40.

The foreclosure decree is also final with respect to the rights and claims of American Budget Company. The decree describes American Budget as having a "valid and subsisting lien pursuant to its Certificate of Judgment, recorded on November 14, 2012" by the Darke County Clerk of Courts. A certificate of judgment must include, among other things, "*the amount of the judgment and costs*, the rate of interest, if the judgment provides for interest, and the date from which such interest accrues." (Emphasis added.) R.C. 2329.02. By incorporating by reference the certificate of judgment, the foreclosure decree conclusively states the full amount of the Sponaugles' liability to American Budget. The final amount due may change between the time of the foreclosure entry and the time of

the confirmation of sale because of accrued interest or possible penalties. But as with the tax lien, all that remains is the ministerial task of calculating the final amount due after sale of the property. The decree leaves no remaining question as to the rights of American Budget on its lien.

The court of appeals cited *Marion Prod. Credit Assn. v. Cochran*, 40 Ohio St.3d 265, 270, 533 N.E.2d 325 (1988), for the proposition that a trial court errs in allowing the foreclosure and sale of property before all the claims and counterclaims in a foreclosure action have been resolved. In this case, however, there were no claims pending when the trial court entered its foreclosure decree. The Sponaugles dismissed their counterclaims in June 2014, more than 18 months before the January 2016 foreclosure decree. And although the Darke County Treasurer asserted a cross-claim under R.C. 323.11 (tax liens shall attach to real property until paid), R.C. 323.47(B)(1) (if real estate is sold at judicial sale, tax liens must be discharged out of the sale proceeds), and R.C. 5721.10 (state shall have first lien on lands for unpaid tax assessments), the foreclosure decree fully adjudicated the county treasurer's cross-claim in accordance with this statutory scheme: it gave the county treasurer priority over all other lienholders.

The order of foreclosure here determined the extent of each lienholder's interest, set out the priority of the liens, and determined the rights and responsibilities of each party. "Liability is fully and finally established when the court issues the foreclosure decree and all that

remains is mathematics, with the court plugging in final amounts due after the property has been sold at a sheriff's sale." *Rosnowski*, 139 Ohio St.3d 299, 2014-Ohio-1984, 11 N.E.3d 1140, at ¶ 25. Because there were no issues remaining to be determined as to the rights and liabilities of the parties, the foreclosure decree was a final, appealable order.

*Sponaugle* at ¶ 28-32.

{¶ 31} In addressing the finality issue herein, M&T asserts that *Sponaugle* resolves the issue if "this Court's concern [is] that the May 16, 2019 Judgment Entry does not establish the full monetary amounts owed to the United States." M&T further states:

> * * * If this Court's concern as to the finality of the May 16, 2019 Judgment is the language that specifically makes no finding as to the claim, right, title, interest or lien of the Defendant, United States of America, except to note that said claim, right, title, interest or lien is ordered transferred to proceeds derived from the sale of the Property – then it is not the Ohio Supreme Court's finding in *Sponaugle* that determines the finality of this order, but rather the facts of the case, the Ohio Civil Rules, and R.C. 2505.02 which determine finality.

{¶ 32} M&T further asserts as follows:

> Here, the May 16, 2019 Judgment Entry makes the express determination that there is "no just reason for delay" pursuant to Civ.R. 54(B). Further, the May 16, 2019 Judgment of the trial court makes the express determination that the liens in favor of the State of Ohio, and the United States of America are both inferior to the lien interest of Plaintiff.

The United States of America['s] lien interest was determined transferred to the sale proceeds. The lien interests of the State of Ohio are determined to be paid in accordance with the State's priority as set forth in the Preliminary Judicial Report. Here, the Preliminary Judicial Report sets forth priorities as being: 1) Plaintiff's Mortgage interest; 2) the Federal Tax Lien held by the United States of America; then 3) all four judgment liens in favor of the State of Ohio. Therefore, the May 16, 2019 Judgment Entry also fulfilled R.C. 2505.02 by effecting both the substantial rights of the lien holders and the substantial rights of the title holders to dispute those liens.

While it is true that the January 31, 2018 Judgment Entry in *Tax Ease Ohio LLC* also contains the language "no just reason for delay," there are distinguishing factors between *Tax Ease Ohio LLC* and this instant matter. The first distinction between *Tax Ease Ohio LLC* and this instant matter is that the title holders in *Tax Ease Ohio LLC* specifically disputed the lien interest of the United States of America. Next, in *Tax Ease Ohio, LLC*, the interest of the United States was against Audrey Wells, a prior title holder of the subject property, the address provided for Audrey Wells on the federal lien was different than that of the subject property, and all federal liens were effectively released as of 2015 – the year prior to the complaint being filed in *Tax Ease Ohio LLC*. * * * Further, if the federal liens in *Tax Ease Ohio LLC* were not effectively released, the federal liens were arguably senior to those of Plaintiff, as having been of record from 2007, whereas Tax Ease Ohio, LLC's liens were from 2013, 2014, and 2015. Therefore, there was

just cause to delay the issuance of a final Judgment Entry in *Tax Ease Ohio LLC*, as there were issues of material fact in dispute as to the lien interests of the United States of America. In contrast herein, Appellants do not dispute the liens of either the United States of America, or the State of Ohio as against them, or against their property. Therefore, in this instant matter, there was truly no cause of delay – whereas in *Tax Ease Ohio LLC,* there was a cause to delay.

This matter herein can also be distinguished from *CitiMortgage, Inc. v. Stanley*, 2d Dist. Greene No. 2018-CA-13, 2018-Ohio-4229. In *Stanley*, the lien holder, Shawnee Hills, maintained a cross-claim for unpaid lot assessments in which it sought to determine liability. Therefore, in *Stanley*, Shawnee Hills had claims pending * * * which the original September 15, 2015 Judgment Entry did not substantially resolve, thereby making the November 10, 2015 Judgment Entry the final appealable order. Herein, however, "all that remains is mathematics, with the court [fixing the] final amounts due [the claimants] after the property has been sold," *Roznowski*, at ¶ 25, as the Federal Tax Lien was issued pursuant to 26 U.S.C. § 6321, which specifies that "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

Therefore, the May 16, 2019 order of foreclosure determined the extent of each lienholder's interest, set out the priority of the liens, and determined the rights and responsibilities of each party. Further, because there were no issues remaining to be determined as to the rights and liabilities of the parties, the foreclosure decree was a final, appealable order.

{¶ 33} We agree with M&T that the trial court's May 16, 2019 Judgment Entry is a final appealable order. The trial court determined that the Woods' mortgage was "a valid first and best mortgage lien upon the property, subject only to the lien of the Treasurer for taxes." The court determined that the "interest of the state lienholder shall be transferred to the proceeds of sale and will be paid in accordance with the State's priority as set forth in the Preliminary Judicial Report." The Preliminary Judicial Report listed the Woods' mortgage, followed by a federal tax lien in the amount of $61,740.53, filed November 29, 2010, against Robert C. Wood, in OR Volume 1918, Page 434 of Clark County records, followed by four judgment liens in favor of the State of Ohio. The answer of the United States of America provided that: "Should the Court find that there are enough monies available from the proceeds of the sale of the property to reach the claim of the United States of America, the exact amount of the monies due and owing will be furnished to the Court at the time," and the trial court ordered the issue "continued until further order." As M&T asserts, the Woods do not dispute the federal lien against them. We conclude that the priority of the liens herein is clear and as follows: 1) the county treasurer; 2) M&T; 3) the federal tax lien, and 4) the judgment liens in favor of the State of Ohio. If the United States of America disputes any amount it receives, it may appeal from the confirmation of sale. Having determined that the decision of the trial court was final and appealable,

we will now address the merits of the Woods' appeal.

{¶ 34} The Woods assert the following assignment of error:

THE TRIAL COURT ERRED IN GRANTING M&T'S MOTION FOR

SUMMARY JUDGMENT.

{¶ 35} The Woods assert that R.C. 1303.16(A) was controlling and demands dismissal of the complaint with prejudice, because M&T's June 23, 2005 correspondence accelerated the due date of the note.  The Woods assert that the statute of limitations expired on June 23, 2011, six years after the date of the letter.

{¶ 36}  The Woods also argue that M&T's "proof" was "not offered by witnesses with the requisite personal knowledge," and thus should not have been considered. According to the Woods, M&T attempted to submit critical documents into the record establishing the elements of foreclosure under the business records exception to the hearsay rule, but such documents should not have been considered because they constituted inadmissible hearsay.

{¶ 37} The Woods further assert that M&T was not the holder of the note, that Tobler's affidavit "should have been struck in its entirety," and that her affidavit failed for the following reasons:

1.   Affiant does not identify M&T Bank's role or position in this matter;

2.   Affiant never stated she had access to the collateral file;

3.   Affiant stated she reviewed the file and did not meet the requirements of Evid.R. 803;

4.   Affiant does not explain her job responsibilities which would serve as the foundation for her claim of personal knowledge;

5. Affiant states that she is familiar with the "business records" but does not explain what that is;

6. Since Affiant has not established M&T Bank's role in this matter, she had not properly set forth the amount claimed to be owed;

7. There is no proof the Right to Cure Letters, dated May 16, 2005, May 24, 2005, and June 23, 2005, were received by the Woods.

{¶ 38} The Woods assert that M&T did not establish that it met conditions precedent to filing foreclosure. According to the Woods, the express language of the note (section 7) and mortgage required that notice be given either by first class mail or by delivery to the property address or other address provided by the mortgagee, and M&T did not establish that a proper notice of default was sent to and received by the Woods via first class mail.

{¶ 39} The Woods also argue that M&T did not establish the amount due under the note. They assert that, in her affidavit, Tobler did not acknowledged or certify the records she reviewed to come to the conclusion as to the amount owed. According to the Woods, "the statements made in Paragraphs 8-10 of the Affidavit to the effect that [they were] in default and as to the amount owed" could not be considered evidence and were "meaningless." The Woods argue that the payment history supplied by Tobler was "done with Affiant being custodian of same, which is a violation of the authentication rule promulgated in Civ.R. 56, which render[ed] her incompetent to testify to the matters stated therein."

{¶ 40} Finally, the Woods assert that an action to foreclose on a mortgage and an action to enforce a note are "two separate and distinct actions. Under Ohio law, in

considering the equities, foreclosure is not an appropriate remedy in this case." The Woods argue that the court was required to balance certain factors to determine whether foreclosure was equitable -- such as the efforts made by the homeowners to pay their loan and have their loan reinstated, and the fairness and good faith of the parties. They assert that for M&T, "a multi-billion dollar corporation," the harm it would suffer if equitable relief were denied is "slight."

{¶ 41} As this Court has noted:

Because appellate review of summary judgment rulings is de novo, we apply the standard set forth in Civ.R. 56(C), pursuant to which summary judgment "shall be rendered forthwith" when: (1) "there is no genuine issue as to any material fact"; (2) "the moving party is entitled to judgment as a matter of law"; and (3) construing the evidence most strongly in favor of the non-moving party, "reasonable minds" could not conclude otherwise. *See also*, *Bonacorsi v. Wheeling & Lake Erie Ry. Co.*, 95 Ohio St.3d 314, 2002-Ohio-2220, 767 N.E.2d 707, ¶ 24; *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978). The movant initially bears the burden of showing that no genuine issues of material fact exist. *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988).

In order to meet this burden, the movant may rely only on those portions of the record properly before the court under Civ.R. 56(C). *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). If the movant thus provides the court with evidence that no genuine issues of material fact exist, then the non-moving party bears the reciprocal burden,

as stated in Civ.R. 56(E), to establish specific facts showing genuine issues to be tried. *Id.* at 293, 662 N.E.2d 264. The non-moving party "may not rest upon the mere allegations or denials of [the] pleading[s], but must set forth specific facts showing there is [at least one] genuine issue for trial" to satisfy its reciprocal burden. *Chaney v. Clark County Agric. Soc.*, 90 Ohio App. 3d 421, 424, 629 N.E.2d 513 (2d Dist.1993), citing Civ.R. 56(E), and *Jackson v. Alert Fire & Safety Equip.*, 58 Ohio St.3d 48, 51, 567 N.E.2d 1027 (1991). Whether a fact is "material" depends on the substantive law of the claim being litigated. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Turner v. Turner*, 67 Ohio St.3d 337, 340, 617 N.E.2d 1123 (1993).

* * * To prevail on a motion for summary judgment in a foreclosure action, the plaintiff must prove: " '(1) [it] is the holder of the note and [the] mortgage, or is a party entitled to enforce [them]; (2) if the [plaintiff] is not the original mortgagee, the chain of assignments and transfers; (3) the mortgagor is in default; (4) all conditions precedent have been met; and (5) the amount of principal and interest due.' " *JP Morgan Chase Bank, N.A. v. Massey*, 2d Dist. Montgomery No. 25459, 2013-Ohio-5620, ¶ 20 , quoting *Wright-Patt Credit Union, Inc. v. Byington*, 6th Dist. Erie No. E-12-002, 2013-Ohio-3963, ¶ 10. * * *

*U.S. Home Ownership, LLC, v. Young*, 2018-Ohio-1059, 109 N.E.3d 681, ¶ 5-7 (2d Dist.).

### 1. Statute of Limitations

{¶ 42} R.C. 1303.16(A) provides: "Except as provided in division (E) of this section,

an action to enforce the obligation of a party to pay a note payable at a definite time shall be brought within six years after the due date or dates stated in the note or, if a due date is accelerated, within six years after the accelerated due date."

{¶ 43} As noted in *Bank of New York Mellon v. DePizzo*, 2015-Ohio-4026, 42 N.E.3d 1218, ¶ 18 (11th Dist.):

> * * * While there are limited cases in Ohio interpreting acceleration under R.C. 1303.16(A), courts in other states have noted, in applying UCC 3-118, that acceleration generally requires a separate act, aside from a mere failure to meet a due date, especially when there is language in the note that the lender may give notice of acceleration due to non-payment. *Thompson v. D.A.N. Joint Venture III, L.P.,* M.D. Ala. No. 1:05-CV-938-TFM, 2007 WL 496754, *3 (Feb. 13, 2007) (a debt "does not mature for the purpose of the statute of limitations" until the last installment is due and unpaid if the note contains an acceleration clause that may be, but is not, exercised by the creditor); *Florian v. Lenge*, 91 Conn.App. 268, 880 A.2d 985, 994 (Conn.App.2005) ("[w]hen acceleration of the total unpaid debt is optional on the part of the holder of a note, and the holder has given no indication to the debtor that the entire unpaid balance is presently due, the cause of action does not accrue until that date balance is due pursuant to the particular note or the holder has notified the debtor of an earlier date") (citation omitted). *See also Boulder Capital Group, Inc. v. Lawson*, 2d Dist. Clark No. 2014-CA-58, 2014-Ohio-5797, ¶ 16 (where a lender had the option to accelerate the debt, such a provision was not self-executing and

"[a]cceleration did not and could not take place until the holder exercised the option") (citation omitted).

{¶ 44} While the Woods assert that the note was accelerated pursuant to the June 23, 2005 correspondence, we agree with M&T that this argument is undermined by the fact that M&T had previously advised the Woods that they were in default without initiating foreclosure. As noted above, Exhibit A-5 to Tobler's affidavit contained correspondence to the Woods dated May 16 and 24, 2005, as well as June 23, 2005, advising them that they were in default of payment. The June 23, 2005 correspondence advised the Woods that to cure the default, they "must pay *the total amount due at this time of $6273.19 * * *,*" and that in the event of their failure to cure this default within 30 days from the date of the letter, their "obligation for payment of the entire balance of the loan *will be accelerated* and become due and payable immediately." In other words, since M&T therein did not indicate to the Woods that the entire unpaid balance of their unpaid debt was *presently* due, M&T's June 23, 2005 correspondence did not trigger R.C. 2303.16(A). We agree with M&T that it did not accelerate the note until the filing of the foreclosure action herein, and R.C. 2303.16(A) did not bar M&T's action against the Woods. Given the specific facts in this case, construing the evidence most strongly in favor of the Woods, and in the absence of a genuine issue of material fact, M&T was entitled to summary judgment on the Woods' statute of limitations argument.

## 2. Tobler's Affidavit and Evid.R. 803(6)

{¶ 45} Regarding the Woods' arguments addressed to Tobler's affidavit, we conclude that Tobler had personal knowledge sufficient for summary judgment purposes to properly authenticate M&T's business records. Evid.R. 803 lists exceptions to the

hearsay rule and provides:

> (6) Records of Regularly Conducted Activity. A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

**{¶ 46}** As this Court has previously determined:

> * * * "For a document to be admitted as a business record, it must first be properly identified and authenticated 'by evidence sufficient to support a finding that the matter is question is what its proponent claims.' " *Deutshce Bank Natl. Trust Co. v. Najar*, 8th Dist. Cuyahoga No. 98502, 2013-Ohio-1657, ¶ 30, quoting Evid.R. 901(A). "Authenticating a business record 'does not require the witness whose testimony establishes the foundation for a business record to have personal knowledge of the exact circumstances or preparation and production of the document.' " *Jefferson v. Careworks of Ohio, Ltd.*, 193 Ohio App.3d 615, 2011-Ohio-1940, 953

N.E.2d 353, ¶ 11 (10th Dist.), quoting *State v. Myers*, 153 Ohio App.3d 547, 2003-Ohio-4135, 795 N.E.2d 77, ¶ 60 (10th Dist.). " 'While the witness need not have personal knowledge of the creation of the particular record in question, and need not have been in the employ of the company at the time the record was made, he must be able to vouch from personal knowledge of the record-keeping system that such records were kept in the regular course of business.' " *State v. Davis*, 62 Ohio St.3d 326, 342, 581 N.E.2d 1362 (1991), quoting *Dell Publishing Co., Inc. v. Whedon*, 577 F.Supp. 1459, 1464, fn. 5 (S.D.N.Y. 1984).

*Fifth Third Mtge. Co. v. Campbell*, 2d Dist. Montgomery No. 25458, 2013-Ohio-3032, ¶ 8.

**{¶ 47}** "As noted by the Fifth District, the 'rationale behind Evid.R. 803(6) is that if information is sufficiently trustworthy that a business is willing to rely on it in making business decisions, the court should be willing to rely on that information as well.' *Quill v. Albert M. Higley Co.*, 2014-Ohio-5821, 26 N.E.3d 1187, ¶ 44 (5th Dist.)." *U.S. Bank N.A. v. Stocks*, 2017-Ohio-8108, 98 N.E.3d 1217, ¶ 61. " 'That an affiant relies on business records for her facts does not mean that the facts are not based on personal knowledge.' *Bibbs v. Cinergy Corp.*, 1st Dist. Hamilton No. C-010390, 2002 WL 537628, *2 (April 12, 2002)." *Id.*

**{¶ 48}** Tobler averred that in her capacity as a Banking Officer, her responsibilities included reviewing M&T's internal record-keeping systems and loan documents, and ensuring the completeness and accuracy of the loan documents and loan histories. She attested to her personal knowledge of M&T's business records for the purpose of servicing mortgage loans. Tobler averred the relevant documents were made at or near

the time of the event, recorded by persons with personal knowledge, and kept in the course of M&T's regularly conducted business activities. She averred that she had personally examined the documents. We conclude that Tobler was able to vouch from personal knowledge of M&T's internal record-keeping systems that the exhibits attached to her affidavit were kept in the regular course of M&T's business and therefore within the above exception to the hearsay rule. Accordingly, the trial court did not err in relying on Tobler's affidavit in granting summary judgment.

### 3.   Standing

{¶ 49} R.C. 1303.38 provides:

(A) A person not in possession of an instrument is entitled to enforce the instrument if all of the following apply:

(1) The person seeking to enforce the instrument was entitled to enforce the instrument when loss of possession occurred or has directly or indirectly acquired ownership of the instrument from a person who was entitled to enforce the instrument when loss of possession occurred.

(2) The loss of possession was not the result of a transfer by the person or a lawful seizure.

(3) The person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

(B) A person seeking enforcement of an instrument under division (A) of this section must prove the terms of the instrument and the person's

right to enforce the instrument. * * *

{¶ 50} The Lost Note Affidavit (Exhibit A-2) to Tobler's affidavit, executed by Joshua Wikman, Assistant Vice President of M&T, established that, like Tobler, Wikman had personal knowledge of the manner in which M&T's business records were created, and that he reviewed and relied upon those records concerning the Woods' loan. Wikman averred that M&T was entitled to enforce the note when the loss of possession occurred, the loss of possession was not the result of assignment, endorsement, or delivery to another party, or an unlawful seizure. Wikman further averred that after a good faith and diligent search of M&T's records, possession of the note could not be reasonably obtained as its whereabouts could not be determined. Wikman's affidavit incorporated a "true and accurate copy of the original Note." The record reflects that the Woods failed to rebut M&T's evidence or set forth facts showing that there was a genuine issue for trial. We conclude that Wikman's unrefuted affidavit established the absence of a genuine issue of material fact on the issue of M&T's standing to enforce the note, and that M&T was accordingly entitled to summary judgment on the issue of its status as the holder of the note.

4. Condition Precedent

{¶ 51} Section 6(C) of the note provides as follows:

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date

must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**{¶ 52}** Section 22 of the mortgage provides as follows:

Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument * * *. The lender shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that the failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. * * *

**{¶ 53}** The mortgage at section 15 provides: "All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument **shall be deemed to have been given to Borrower when mailed by first class mail** * * *." (Emphasis added).

**{¶ 54}** As noted above, Tobler averred that, prior to filing its complaint, M&T sent

three notices of default to the Woods "via first class mail in accordance with the terms of the Note and Mortgage" on May 16 and 24, and June 23, 2005. In their motion for summary judgment, the Woods noted that M&T's letter of June 23, 2005 was "in satisfaction of the requirement that it give Defendants thirty days written notice of their right to cure the default prior to calling the entire sum due. This being the case, the sending of such notice was a necessary precondition to foreclosure." The Woods further asserted that the fact that they did not specifically admit *receiving* the 11-year-old letter was "of no matter." Pursuant to section 15 of the mortgage, since the June 23, 2005 correspondence was sent via first class mail, it was deemed to have been given to the Woods. Accordingly, in the absence of a genuine issue of material fact, we conclude that M&T was entitled to summary judgment, having met the condition precedent at issue.

### 5. Amount Due Under the Note

{¶ 55} Tobler averred that "[a]s a result of the default on the Note and Mortgage, and the acceleration of the debt, there is due and owing a principal balance of $211,853.99 together with interest at the rate of 7.875% per year from March 1, 2005 or as otherwise adjusted pursuant to the terms of the Note." Exhibit A-6, the properly authenticated payment history, reflected that the principal balance on the note had been $211,853.99 since March 2005. A customer account activity statement dated September 18, 2018, reflected a then-current principal balance of $211,853.99. Tobler further averred that M&T Bank had "advanced and/or may advance funds for the payment of reasonable and necessary real estate taxes, hazard insurance premiums or otherwise for protection of the property, together with court costs and other expenses incident to this action, the total amount of which will be ascertainable at the time of the foreclosure

sale in this matter." Construing the evidence in a light most favorable to the Woods, and in the absence of a genuine issue of material fact, we conclude that M&T is entitled to summary judgment on the amount due under the note.

<u>6. Equitable Relief</u>

{¶ 56} As this Court has noted:

> "[B]ecause foreclosure is equitable relief, 'the simple assertion of the elements of foreclosure does not require, as a matter of law, the remedy of foreclosure.' " *PHH Mtge. Corp. v. Barker*, 190 Ohio App.3d 71, 2010-Ohio-5061, 940 N.E.2d 662, ¶ 35 (3d Dist.), quoting *First Natl. Bank of Am. v. Pendergrass*, 6th Dist. No. E-08-048, 2009-Ohio-3208, ¶ 22. Having determined that the [borrowers] defaulted on their note, the question becomes whether foreclosure is a proper remedy.

*Wells Fargo Financial Ohio 1, Inc. v. Robinson*, 2d Dist. Champaign No. 2016-CA-23, 2017-Ohio-2888, ¶ 19.

{¶ 57} Citing *PHH Mtge.,*the Woods assert that the trial court was required to "balance certain factors" to determine whether foreclosure was equitable, such as the efforts made by the homeowners to pay their loan and have their loan reinstated, and the fairness and good faith of the parties." The Woods also assert that for M&T, "a multi-billion dollar corporation," the harm it would suffer if equitable relief were denied was "slight." As noted above, the principal balance due on the note had not changed since 2005. Construing the evidence in a light most favorable to the Woods, the equities favored foreclosure, and M&T was entitled to summary judgment as a matter of law on its foreclosure complaint.

{¶ 58} The Woods' sole assignment of error is overruled.

{¶ 59} The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J. and FROELICH, J., concur.

Copies sent to:

Michael L. Wiery
Katherine D. Carpenter
Daniel L. McGookey
Kathryn M. Eyster
John M. Lintz
State of Ohio Department of Taxation
Gregory Dunsky
Judge Richard J. O'Neill